## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH P. FRANKENBERRY,               :

       Plaintiff               :     CIVIL ACTION NO. 3:08-1565

       v.               :        **(CAPUTO, D.J.)**
                                 **(MANNION, M.J.)**
FEDERAL BUREAU OF               :
INVESTIGATION and U.S.
DEPARTMENT OF JUSTICE,               :

       Defendants               :

### REPORT AND RECOMMENDATION[1]

Presently pending before the court are: (1) the plaintiff's motion for summary judgment, (Doc. No. 20); and (2) the defendants' motion for summary judgment, (Doc. No. 29). Upon review of the motions and related materials, it is recommended that the plaintiff's motion for summary judgment be denied and the defendants' motion for summary judgment be granted in part and denied in part.


## I.    PROCEDURAL BACKGROUND

By way of relevant background, on August 21, 2008, the plaintiff filed the instant action pursuant to the Freedom of Information Act, ("FOIA"), 5

---

[1]For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

U.S.C. §§552, et seq. (Doc. No. 1).

On May 13, 2009, the plaintiff filed a motion for summary judgment, (Doc. No. 20), along with a supporting declaration, (Doc. No. 21), and brief, (Doc. No. 22). A brief in opposition to the plaintiff's motion for summary judgment was filed on May 29, 2009. (Doc. No. 23).

On October 8, 2009, the defendants filed a motion for summary judgment, (Doc. No. 29), along with a statement of material facts, (Doc. No. 30), and a brief in support. (Doc. No. 31). The plaintiff filed a brief in opposition to the defendants' motion for summary judgment on November 18, 2009, (Doc. No. 38), along with an answer to the defendants' statement of material facts, (Doc. No. 39).

By report dated January 29, 2010, (Doc. No. 49), the undersigned recommended, among other things, that the plaintiff's motion for summary judgment be dismissed as originally premature and then moot, and that the defendants' motion for summary judgment be granted. By memorandum and order dated April 7, 2010, the district judge declined to adopt the report of the undersigned on the motions for summary judgment. (Doc. No. 56). With respect to the defendants' motion for summary judgment, the district judge found that the factual record was in need of further development in order to determine whether the withholding of certain information from the response

2

to the plaintiff's FOIA request was justified. Specifically, the district judge found the Vaughn index[2] submitted by the defendants to be inadequate under Davin v. U.S. Dep't of Justice, 60 F.3d 1043 (3d Cir. 1995)[3]. As a result, the district judge further declined to adopt the recommendation on the plaintiff's motion for summary judgment. The matter was remanded to the undersigned for further development of the factual record and a renewed report on the parties' motions for summary judgment.

In accordance with the district judge's memorandum and order, by order

[2]"A Vaughn index is an index correlating each withheld document, or a portion thereof, with a specific exemption and relevant part of an agency's justification for nondisclosure. The Vaughn index is a tool designed to aid the court in determining whether the agency has properly withheld the information requested." Davin, 60 F.3d 1043, 1047 (3d Cir. 1995)(citing Vaughn v. Rosen, 484 F.2d 820 (D.C.Cir. 1973)(Vaughn I), cert. denied, 415 U.S. 977 (1974).

[3]In Davin, a graduate history student brought a FOIA action against the FBI seeking disclosure of records pertaining to an organization that had been investigated by the FBI during the 1930's, and to an individual who headed the organization for a period of time. While the FBI's search for records revealed over 10,000 pages responsive to the plaintiff's request, the FBI withheld over 7,400 pages in their entirety or in substantial part claiming various FOIA exemptions. In response to the plaintiff's FOIA action, the FBI submitted a Vaughn index which contained only coded justifications and corresponding explanations for its withholding of all of the information in the 7,400 pages. The district court found the index to be sufficient and granted the government summary judgment. However, on appeal, the Third Circuit found that the Vaughn index submitted by the government did not sufficiently describe the information withheld and therefore found that the district court did not have an adequate factual basis for determining whether the claimed exemptions applied to the individual documents.

dated June 25, 2010, the defendants were directed to supplement their motion for summary judgment and, specifically, their Vaughn index. To the extent he wished to do so, the plaintiff was permitted time to file a response. (Doc. No. 60).

On July 20, 2010, the defendants filed their supplemental materials. (Doc. No. 63). On July 30, 2010, the plaintiff filed objections to the defendants' supplemental materials. (Doc. No. 66).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp.

836, 838 (M.D. Pa. 1995). To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). In opposing a summary judgment motion, a party may not "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit," Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990), but rather must "set forth specific facts showing that there is a genuine issue for trial," Liberty Lobby, 477 U.S. at 248 (citation and internal quotation marks omitted).

In a FOIA case, the court may grant summary judgment based on information provided in an agency's affidavits or declarations when they

describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Richardson v. U.S. Dep't of Justice, --- F.Supp.2d ---, 2010 WL 3191796 (D.D.C. 2010)(citing Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C.Cir. 1981)). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" Id. (citing SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C.Cir. 1991)(quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C.Cir. 1981)).

"[A] plaintiff pursuing an action under FOIA must establish that either: (1) the Vaughn index does not establish that the documents were properly withheld; (2) the agency has improperly claimed an exemption as a matter of law; or (3) the agency has failed to segregate and disclose all nonexempt material in the requested documents." Richardson v. U.S. Dep't of Justice, at *2 (citing Schoenman v. FBI, 573 F.Supp.2d 119, 134 (D.D.C. 2008)(citations omitted)).

6

## III. DISCUSSION

Factually, the record demonstrates that by letter dated November 13, 2006, the plaintiff submitted a FOIA/Privacy Act, ("PA"), request to the Federal Bureau of Investigation, ("FBI"), at its headquarters in Washington, D.C. In his letter, the plaintiff requested ". . . access to all records pertaining to <u>U.S. v. Joseph P. Frankenberry</u>, Nos. 81-2853 & 81-2854, U.S. District Court, M.D. of PA., . . ." Additionally, the plaintiff requested:

> ". . . all FD-302 & FD-36 statements, interviews (written or taped notes) including all photographs, taped conversations taken by FBI S/A's Dan P. Harelson, S/A Ronald E. Brinkley, S/A David J. Kwait, S/A James R. Peck, and any other Agents or S/A pertaining to the above cited records pertaining to all defendants who plead (sic) guilty to the Armed-Robbery of Platinum [C]obalt Alloy, valued @ $260,000.00 from Lancaster Metal Science Corp., 1695 Bate Street, East Petersburg, PA., on January 7, 1980, in regards to those defendants Charles Ralph Huey, James E. Huey, John Sullivan, Perry Ostroff and any others charged/convicted of that crime, including all investigative records compiled by the FBI @ FBI #360328F and FBI File No. 95-241933."

Finally, the plaintiff requested:

> ". . . all FD-302 & FD-36 statements, interviews (written or taped notes) including all photographs, taped conversations taken by all FBI S/A described above regarding the below listed cases: <u>Commonwealth v. Joseph Peter Frankenberry</u>, Nos. 158 & 158 ½ of 1981, in the Court of Common Pleas, Fayette County, PA.; <u>Commonwealth v. Phoeby Louise Tomasek</u>, Nos. 159 & 159 ½ of 1981, in the Court of common Pleas, Fayette County, PA.; <u>Commonwealth v. Elmer Wayne Younkin</u>, Nos. 160 & 160 ½ of

7

1981, in the Court of Common Pleas, Fayette County, PA.; and, Commonwealth v. Joseph Peter Frankenberry, Nos. 168, 168 1/3 & 168 2/3 of 1981, in the Court of Common Pleas, Fayette County, PA."

The FBI acknowledged receipt of the plaintiff's request on December 18, 2006, and assigned FOIA/PA number 1065215.

On May 10, 2007, the FBI provided a response to the plaintiff's request. The defendants' materials provide that the FBI processed a total of 321 pages responsive to the plaintiff's request. It released to the plaintiff a total of 267 pages with 102 pages being released in full and 165 pages released in part. Thirty-two pages were withheld in full under FOIA and 22 pages were not produced because they were duplicates. The plaintiff was advised that he could administratively appeal the response within 60 days, which he did[4]. In doing so, the plaintiff indicated that the 267 pages were only responsive to part of his request and that he believed that there were other documents available. When no response to his appeal was received, on August 28, 2008, the plaintiff filed the instant action.

---

[4]The defendants' materials provide that the Department of Justice, ("DOJ"), does not have a record of the plaintiff's appeal. However, they acknowledge that the plaintiff has produced a copy of a PS Form 3811 signed by a DOJ employee on June 18, 2007. (Doc. No. 31, Ex. C). The FOIA requires an agency to make a determination with respect to any appeal within twenty days.  5 U.S.C. §552(a)(6)(A)(ii).

## A. Plaintiff's Motion for Summary Judgment

In his motion for summary judgment and related materials, the plaintiff states that he made FOIA requests for ". . . documents germane to his arrest and conviction as identified in the complaint . . ." (Doc. No. 20, p. 1). While admittedly receiving documents relating to his request, the plaintiff contends that there are additional existing documents which the defendants have withheld because ". . . they would unequivocally demonstrate Charles Ralph Huey, an informant and agent for the defendants did meet with the defendants before January 24, 1981 which is sufficient to establish Charles Ralph Huey and F.B.I. Special Agents did commit perjury in all four (4) trials against [the plaintiff]; that said defendants did conspire with Charles Ralph Huey to lie, and therefore suborn perjury on the witness stand in four separate trials against [the plaintiff] for purposes of securing a conviction[.]" (Doc. No. 21, pp. ii).

In support of his claim that there are additional existing documents responsive to his request, the plaintiff has provided the affidavits of his friend, Marshall Woodley, and his nephew, Erik V. Huey, who both provide that, in October of 2006, they had conversations with Thomas I. Vanaskie, the plaintiff's former appellate counsel, and now a judge for the United States

Court of Appeals for the Third Circuit[5], who advised them that he had obtained the plaintiff's evidence file from the United States Attorney's Office in the Middle District of Pennsylvania. (Doc. No. 21, Exs. AA, BB). According to the affidavits, Judge Vanaskie indicated that the file contained various photographs, "life" tapes, investigative reports from the FBI, and taped conversations, all dated prior to January 24, 1981, which could be exculpatory to the plaintiff. The plaintiff claims that these affidavits establish that the following materials exist and are in the possession of the defendants despite their failure to produce them:

> (a) photographs identified in the complaint taken by defendants on or about January 24, 1981 as set forth in the complaint;
> (b) various investigative reports from the FBI and taped conversations on or about/before January 24, 1981;
> (c) taped conversations between informant and F.B.I. Agent, Ralph Huey, Plaintiff and Ted Slagel and James Huey via telephone and/or in person on or before January 24, 1981;

* * *

(Doc. No. 20, p. 2).

The sole argument raised by the plaintiff in his motion for summary judgment is that the defendants have failed to properly establish the adequacy

---

[5]At the time of the plaintiff's filing, Judge Vanaskie was a district judge for the United States District Court for the Middle District of Pennsylvania.

of their search for the materials which he requested. He argues that correspondence from David M. Hardy, the Section Chief of the FBI's Record/Information Dissemination Section, Records Management Division, dated May 10, 2007, providing a response to his FOIA request ". . . cannot be considered a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched, or at a minimum, describe in reasonable detail the scope and method by which the search was conducted." (Doc. No. 22, p. 3). The plaintiff argues that no affidavit and/or declaration was submitted in this case indicating in reasonable detail the search terms and the type of search that was performed and the scope and method by which the search was conducted. The adequacy of the defendants' search for documents related to the plaintiff's request is the sole issue raised in the brief in support of the plaintiff's motion for summary judgment.

In considering the plaintiff's motion for summary judgment, the court initially finds that the plaintiff's supporting affidavits should not be considered as they do not comply with the requirements of Federal Rule of Civil Procedure 56(e). Specifically, the affidavits contain inadmissible hearsay. The individuals making the affidavits rely upon information which they allege was

provided to them by (then appellate attorney) Vanaskie about what documents were in existence with respect to the plaintiff's criminal matters. Federal Rule of Civil Procedure 56(e)(1) provides that a court may consider affidavits supporting or opposing summary judgment that are "made on personal knowledge, [and which] set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Neither Mr. Woodley or Mr. Huey indicate that they have personal knowledge with respect to the documents at issue, but instead rely upon the information allegedly relayed by (then appellate attorney) Vanaskie concerning their existence. Thus, this alleged information is inadmissible hearsay because it is not based upon personal knowledge and should not be considered in relation to the plaintiff's motion for summary judgment. See Blackburn v. United Parcel Servs., 179 F.3d 81, 95 (3d Cir. 1999)("[A] hearsay statement that is not capable of being admissible at trial should not be considered on a summary judgment motion."). In support of his claims, the plaintiff did not submit an affidavit from one with personal knowledge, instead, he chose to rely on the affidavits of Mr. Woodley and Mr. Huey, neither of which comport with the Federal Rules of Civil Procedure and should, therefore, not be considered.

12

Moreover, in considering the plaintiff's motion for summary judgment, an agency from which information has been requested must undertake a search that is "reasonably calculated to uncover all relevant documents." Fischer v. U.S. Dep't of Justice, --- F.Supp.2d ---, 2010 WL 2745811 (D.D.C. 2010)(citing Weisberg v. Dep't of Justice, 705 F.2d 1344, 1351 (D.C.Cir. 1983)). "[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." Id. (citing Iturralde v. Comptroller of the Currency, 315 F.3d 311, 315 (D.C.Cir. 2003)). The court applies a "'reasonableness' test to determine the 'adequacy' of search methodology," and requires a "reasonable and systematic approach to locating the requested documents." Id. (quoting Campbell v. Dep't of Justice, 164 F.3d 20, 27 (D.C.Cir.1998); Ctr. for Pub. Integrity v. FCC, 505 F.Supp.2d 106, 116 (D.D.C. 2007)). "The agency must demonstrate that it 'made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" Id. (quoting Fischer v. U.S. Dep't of Justice, 596 F.Supp.2d 34, 42 (D.D.C. 2009)(quoting Oglesby v. Dep't of the Army, 920 F.2d 57, 68 (D.C.Cir. 1990)).

As previously set forth by the court, the relevant inquiry is not "whether

there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C.Cir.1984). To demonstrate the adequacy of its search, the agency should provide a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 326 (D.C.Cir.1999) (quoting Oglesby, 920 F.2d at 68). "In the absence of countervailing evidence or apparent inconsistency of proof, [such affidavits] will suffice to demonstrate compliance with the obligations imposed by the FOIA." Bennett v. DEA, 55 F.Supp.2d 36, 39 (D.D.C. 1999)(citing Perry v. Block, 684 F.2d 121, 127 (D.C.Cir. 1982)).

In the instant action, on October 8, 2009, after the plaintiff filed his motion for summary judgment, but prior to the expiration of the dispositive motion deadline, the defendants submitted their motion for summary judgment, in conjunction with which they have provided the required affidavit setting forth the details of the search related to the plaintiff's request[6].

---

[6]This information is also contained within the defendants' supplemental materials. (Doc. No. 63).

Specifically, the defendants have provided the declaration of David M. Hardy, the Section Chief of the Record/Information Dissemination Section, ("RIDS"), Records Management Division, ("RMD"), formerly at the Federal Bureau of Investigation Headquarters, ("FBIHQ"), Washington, D.C., and currently located in Winchester, Virginia. (Doc. No. 31, Attached Declaration). Mr. Hardy's declaration provides as follows:

## EXPLANATION OF THE FBI'S CENTRAL RECORDS SYSTEM

(11) The Central Records System ("CRS") enables the FBI to maintain information which it has acquired in the course of fulfilling its mandated law enforcement responsibilities. The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes. This system consists of a numerical sequence of files, called FBI "classifications," which are broken down according to subject matter. The subject matter of a file may relate to an individual, organization, company, publication, activity, or foreign intelligence matter (or program). Certain records in the CRS are maintained at FBIHQ. Records that are pertinent to specific field offices of the FBI are maintained in those field offices. Although the CRS is primarily designed to serve as an investigative tool, the FBI searches the CRS for documents that are potentially responsive to FOIA requests. The mechanism that the FBI uses to search the CRS is the Automated Case Support System ("ACS").

(12) The retrieval of data from the CRS is made possible through the ACS using the General Indices, which are arranged in alphabetical order. The General Indices consist of index cards on various subject matters that are searched either manually or through the automated indices. The entries in the General Indices fall into two categories:

(a) A "main" entry – A "main" entry, or "main" file, carries the name corresponding with a subject of a file contained in the CRS.

(b) A "reference" entry – A "reference" entry, sometimes called "cross-references," are generally only a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another "main" file on a different subject matter.

(13) Access to the CRS files in FBI Field Offices is also obtained through the General Indices (automated and manual), which are likewise arranged in alphabetical order, and consist of an index on various subjects, including the names of individuals and organizations. Searches made in the General Indices to locate records concerning a particular subject, such as Joseph P. Frankenberry, are made by searching the subject requested in the index. FBI Field Offices have automated indexing functions.

(14) On or about October 16, 1995, the ACS system was implemented for all Field Offices, Legal Attaches ("Legats"), and FBIHQ in order to consolidate portions of the CRS that were previously automated. ACS can be described as an internal computerized subsystem of the CRS. Because the CRS cannot electronically query the case files for data, such as an individual's name or social security number, the required information is duplicated and moved to the ACS so that it can be searched. Over 105 million records from the CRS were converted from automated systems previously utilized by the FBI. Automation did not change the CRS; instead, automation has facilitated more economic and expeditious access to records maintained in the CRS.

(15) The ACS consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases:

(a) Investigative Case Management ("ICM") – ICM provides the ability to open, assign, and close investigative and administrative cases as well as set, assign, and track leads. The Office of Origin ("OO"), which sets leads for itself and other field

16

offices, as needed, opens a case. The field offices that receive leads from the OO are referred to as Lead Offices ("LOs"), formerly known as Auxiliary Offices. When a case is opened, it is assigned a Universal Case File Number ("UCFN"), which is used by all FBIHQ, as well as all FBI field offices and Legats that are conducting or assisting in the investigation. Using the file number "87-HQ-12345 as an example, an explanation of the UCFN is as follows: "87" indicates the classification for the specific type of investigation, in this case is "Interstate Transportation of Stolen Property"; "HQ" is the abbreviated form used for the OO of the investigation, in this case is Headquarters; and "12345" denotes the individual case file number for the particular investigation.

(b) Electronic Case File ("ECF") – ECF serves as the central electronic repository for the FBI's official text-based documents. ECF supports the universal serial concept in that only the creator of a document serializes it into a file. This provides a single-source entry of serials into the computerized ECF system. All original serials are maintained in the OO case file.

(c) Universal Index ("UNI") – UNI continues the universal concepts of ACS by providing a complete subject/case index to all investigative and administrative cases. Only the OO is required to index; however, the LOs may index additional information as needed. UNI, an index of approximately 105 million records, functions to index names to cases, and to search names and cases for use in FBI investigations. Names of individuals or organizations are recorded with identifying applicable information such as date or place of birth, race, sex, locality, Social Security number, address, and/or date of event.

(16) The decision to index names other than subjects, suspects, and victims is a discretionary decision made by the FBI Special Agent ("SA") – an on occasion, support employees – assigned to work on the investigation, the Supervisory SA ("SSA") in the field office conducting the investigation, and the SSA at FBIHQ. The FBI does not index every name in it files; rather, it indexes only that information considered to be pertinent, relevant, or essential for future retrieval. Without a "key" (index) to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved. The FBI files would

thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI, which is to investigate violations of federal criminal and national security statutes. Therefore, the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual, such as Joseph P. Frankenberry.

## SEARCH FOR RECORDS RESPONSIVE
## TO PLAINTIFF'S REQUEST

(17) In response to plaintiff's FBIHQ request, the FBI conducted a search of the FBIHQ indices to the CRS to identify all potentially responsive files indexed to Joseph P. Frankenberry. This search would locate records using the phonetic sounds of the last, middle, and first names relating to the following name: "Joseph P. Frankenberry." The FBI also used plaintiff's date of birth to facilitate the identification of requested records. As a result of this search, three main files were identified as responsive. After careful review, files 95-HQ-241933, 87-HQ-150616, and 183-HQ-4763 were processed and released in part.

## FBI FOIA/PA POLICY CONCERNING ROUTINE AUTOMATED
## SEARCHES AND SEARCHES OF THE CRS FOR RECORDS
## RESPONSIVE TO PLAINTIFF'S REQUESTS

(18) The FBI's current policy is to search for and identify only "main" files responsive to FOIA/PA requests at the initial stage, and as a result, no cross-references were included in the FBI's initial response. Upon the receipt of the complaint in the present litigation, the FBI conducted a second search of the CRS to locate cross-references responsive to plaintiff's requests using the same search terms as above: "Joseph P. Frankenberry." The second search of the CRS revealed a cross-reference maintained on microfilm in file 17-19658 (Veterans' Administration Matters); however, after numerous attempts, this file has not been located in order to determine if this cross-reference is identical to the

subject. The FBI has conducted a search reasonably designed to yield documents responsive to plaintiff's request directed to FBIHQ.

(19). In accordance with Department of Justice FOIA regulations, 28 C.F.R. §§16.3(a) and 16.41(a), FOIA/PA requesters are placed on constructive notice that it is incumbent upon them to direct their requests to those FBI field offices most likely to maintain responsive records. Mr. Frankenberry's FOIA/PA request was directed to FBIHQ. As a result, the FBI's search efforts were limited only to those records maintained at FBIHQ.

(Doc. No. 31, Attached Declaration of David M. Hardy)(footnote omitted).

The above affidavit satisfies the defendants' burden of establishing the adequacy of the search related to the plaintiff's request. It provides a reasonably detailed explanation of the FBI's central records system. It provides the scope of the search conducted as well as the search terms used in an attempt to find records responsive to the plaintiff's request. The defendants' materials provide that they have conducted a search which is reasonably calculated to uncover all relevant documents.

Although the plaintiff argues that the affidavits which he has provided establishes that there are other documents which exist that are responsive to his request, an agency's search is not presumed unreasonable if it fails to find every possibly responsive document. See Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C.Cir. 1994)(explaining that relevant question is not

"whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."). Even if the plaintiff could show that specific responsive documents exist and were not produced, this does not rebut the presumption of good faith accorded to agency affidavits. Fischer v. U.S. Dept. of Justice, --- F.Supp.2d ---, 2010 WL 2745811 at *4.

Moreover, it may well be that even if such documents exist the documents which the plaintiff seeks are not maintained at the FBI Headquarters where the plaintiff submitted his request, but are located at a field office of the FBI. Although the plaintiff argues that it was an Assistant United States Attorney who suggested that he file his request with the FBI Headquarters and that no one at the FBI Headquarters ever informed him that he should direct his request to a specific field office, it is not the responsibility of either the United States Attorney's Office nor the FBI to assure the plaintiff's compliance with the relevant FOIA provisions. To this extent, a FOIA requester must comply with an agency's "published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. §552(a)(3)(A). The DOJ FOIA/PA regulations, 28 C.F.R. §16.3(a) and 28 C.F.R. §16.41(a), direct that it is incumbent upon FOIA/PA requesters to direct their requests

to those FBI field offices most likely to maintain responsive records. The plaintiff's request was directed to FBI Headquarters. The records maintained at that location appears to have been adequately searched as presented in the defendants' materials.

Considering the above, it is recommended that the plaintiff's motion for summary judgment, which argues only that the defendants failed to conduct an adequate search for records responsive to his request, be denied.

## B. Defendants' Motion for Summary Judgment

In the brief in support of their motion for summary judgment, the defendants argue: (1) that they have conducted an adequate search for records responsive to the plaintiff's request; and (2) that the FBI has not improperly withheld any records or portions thereof from the plaintiff. (Doc. No. 31).

As already discussed, the court agrees that the defendants have established that they have conducted a reasonable search for records responsive to the plaintiff's request. Therefore, for the reasons set forth above, the defendants' motion for summary judgment should be granted on this basis.

In support of their claim that the FBI has not improperly withheld any records or portions thereof from the plaintiff, the defendants have submitted a supplemental Vaughn declaration and rely upon the legal arguments raised in their original supporting brief. The original Vaughn declaration provided by the defendants in support of their motion for summary judgment is thirty-two pages in length and outlines the FBI's record-keeping system, the procedures used to search for records responsive to the plaintiff's request, and the categories of justifications used for withholding certain information in the plaintiff's case pursuant to the FOIA/PA. As previously discussed, the district judge found the defendants' original Vaughn declaration to be factually inadequate pursuant to the standards set forth in Davin v. United States Dept. of Justice, supra.  As a result, the defendants were directed to supplement their Vaughn declaration.

The defendants' supplemental Vaughn declaration is 239 pages in length. Like the defendants' original declaration, the supplemental declaration sets forth the procedural history of the plaintiff's FOIA/PA request; an explanation of the FBI's CRS; a description of the searches conducted for records responsive to the plaintiff's request; and the FBI's policy concerning routine automated searches and searches of the CRS for responsive records.

Unlike the original declaration, however, the supplemental declaration provides not only a summary of the justification categories used to withhold information responsive to the plaintiff's request, but also contains narrative descriptions of each page of every document responsive to the plaintiff's request with the FBI's justification for withholding each particular category of information under the applicable statutory exemption. Specifically, for each document, the defendants have provided the file number of the document[7]; the document number; the Bates page number(s) of the document; the date of the document; a description of the document; the total number of pages of the document; the total number of pages withheld from the document; the total number of pages with deletions of information from the page(s); and the total number of duplicate pages. In addition, where either pages or portions of a page are withheld, the defendants have provided a general description of what the information was which was redacted, the FOIA exemption under

---

[7]With respect to the file number itself, the defendants' declaration provides that each number contains three categories of information: the classification for the specific type of investigation, the office of origin of the investigation, and the individual case file number for the particular investigation. (Doc. No. 63, p. 7). For example, using "87-HQ-12345," the defendants' declaration provides that the "87" indicates the classification of the specific type of investigation, in this case, "Interstate Transportation of Stolen Property;" "HQ" is the abbreviation for the office of origin which, in this case, would be Headquarters; and "12345" denotes the individual case file number for the particular investigation. (Id.).

which the information falls, and the reason for withholding the information. (Doc. No. 63, pp. 31-237). In the supplemental <u>Vaughn</u> declaration, each redaction made has been correlated specifically and unambiguously to a corresponding exemption. Moreover, the supplemental <u>Vaughn</u> index provides an explanation for each FOIA exemption invoked and describes the information redacted, such as whether the information is the name of a third party merely mentioned or the name of a special agent.

The plaintiff challenges the defendants' supplemental <u>Vaughn</u> declaration arguing that the defendants' narrative descriptions fail to cure the deficiencies of the original <u>Vaughn</u> declaration. Additionally, the plaintiff argues that the defendants have failed to provide any justification for the specific deletions in each document. Specifically, he argues that the defendants have failed to include any factual information concerning the documents or portions of documents withheld and have failed to correlate the claimed exemptions to the withheld information. The plaintiff argues that there is no specific contextual link provided by the supplemental declaration between the redacted material and the exemption claimed by the defendants[8].

---

[8]In his original materials opposing the defendants' motion for summary judgment, the only issue raised by the plaintiff was whether the search for
(continued...)

The essential function of a <u>Vaughn</u> index is "to establish a detailed factual basis for the application of the claimed FOIA exemptions" to information withheld. <u>Davin, 60 F.3d at 1049</u>. "While there is no set formula for a <u>Vaughn</u> index, the hallmark test is 'that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure.'" <u>Davin</u>, at 1050 (quoting <u>Hinton v. Dep't of Justice, 844 F.2d 126, 129 (3d Cir. 1988)</u>).

An agency is entitled to summary judgment only when the agency's affidavit describes the withheld information and the justification for withholding the information with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption, and is not controverted by either contrary evidence in the record or evidence of bad faith. <u>Davin, 60 F.3d at 1050</u> (quoting <u>American Friends Svc. Comm. v. Department of</u>

---

[8](...continued)
documents responsive to his FOIA/PA request was adequate and reasonably calculated to uncover all relevant documents. The plaintiff argued until the defendants responded fully to his request, their motion for summary judgment was premature. (Doc. No. <u>38</u>, Doc. No. <u>39</u>). While the plaintiff generally argued that the original <u>Vaughn</u> declaration was ". . . flawed, self-serving and designed pretextually to fit plaintiff's case, made in bad faith and, demonstrates the agency failed to provide that it has fully discharged its FOIA obligations . . .," it was not until the instant action was remanded for further development of the factual record that the plaintiff made specific challenges to the defendants' <u>Vaughn</u> index based upon the language in <u>Davin</u>, which was relied upon by the district judge in remanding the matter.

Defense. 831 F.2d 441, 444 (3d Cir.1987).

In discussing Davin in relation to the instant case, the district judge

stated as follows:

> In Davin, the FBI offered the declaration of one of its agents
> as its Vaughn index; the declaration described the FBI's
> generalized FOIA procedures, included a summary of the
> "justification categories," set forth an explanation of the
> justification categories used to redact the material, created a code
> system for each of these justifications, and then placed these
> three-letter codes next to the redacted portions of the documents.
> 60 F.3d at 1050. The Third Circuit Court of Appeals held that,
> while categorical Vaughn indices are not *per se* inadequate, any
> agency using justification codes "must also include specific
> factual information concerning the documents withheld and
> correlate the claimed exemptions to the withheld documents. Id.
> at 1051. The Davin court remanded the case to the district court
> and held that the index created by the FBI provided 'no
> information about particular documents that might be useful in
> evaluating the propriety of the decision to withhold' and did not
> provide a sufficient factual basis from which the district court
> could rule on the applicability of the claimed exemptions. Id.
> In the instant case, Defendants have used essentially the
> same categorical type of Vaughn index that was rejected by the
> Third Circuit Court of Appeals in Davin. There is no specific
> contextual link provided by the agency between the redacted
> material and the exemption claimed by Defendants. Without
> more, it is impossible for this Court to engage in a proper *de novo*
> review of the exemptions that Defendants seek to use as
> justification for withholding documents from Plaintiff.

(Doc. No. 56, p. 7).

In considering the plaintiff's arguments relating to the adequacy of the

defendants' supplemental Vaughn declaration, the court looks to the specific

objections of the plaintiff to the defendants' filing[9]. Initially, challenging the defendants' supplemental index relating to exemptions (b)(6) and (b)(7)(C)[10], the plaintiff argues that the defendants are only entitled to withhold the identities of living law enforcement personnel, witnesses, interviewees and suspects in connection with the FBI's investigation. (Doc. No. 66, pp. 4, 5, 6, 7). The plaintiff argues that the defendants' have provided no proof that the names and identifying information of the individuals withheld under exemptions (b)(6) and (b)(7)(C) are, in fact, still alive. Given the passage of time since the start of his case, approximately thirty years, the plaintiff

---

[9]At this juncture, the court notes the inherent difficulty in reviewing FOIA cases such as the one at hand. While trying to resolve this issue and, at the same time, create workable rules for the review of FOIA cases, the use of Vaughn indices is helpful, but far from a perfect solution. Although the court reviews such cases *de novo*, meaning "anew" (see 5 U.S.C. §552(a)(4)(B)) there is an inherent dilema in factually supporting, while at the same time not releasing information that would expose legitimately confidential matters. There is no brightline rule or mathematical formula to arrive at this delicate balance. Even with these indices the court has the daunting task of trying to determine, in relative abstract, the validity of the government's claims of exemption on a document-by-document, page-by-page basis.

[10]Exemptions (b)(6) and (b)(7)(C) generally relate to information which, if released, would or could, respectively, constitute an unwarranted invasion of personal privacy such as names and/or identifying information of FBI agents and support employees, names and/or identifying information of third parties who were of investigative interest to the FBI or local authorities, names and/or identifying information of third parties merely mentioned, names and/or identifying information of local law enforcement personnel, names and/or identifying information of third parties who provided information, and names and/or identifying information of non-FBI federal employees.

presents that the defendants' declaration is insufficient for their failure to provide factual information which indicates whether the individuals are, in fact, still living. At the same time, the plaintiff acknowledges that it is within the discretion of the court to require the defendants to demonstrate that the individuals upon whose behalf it claims the privacy exemption are, in fact, alive. (Id. at 7).

Exemption (b)(6) permits an agency to withhold from disclosure "personnel and medical files and similar files" if their disclosure would "constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. §552(b)(6). Exemption (b)(7)(C) exempts disclosure of information based on privacy concerns by permitting an agency to withhold from disclosure information that is "compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. §552(b)(7)(C). Because the two exemptions are used in conjunction, the court only needs to analyze the Exemption (b)(7)(C).

Exemption (b)(7)(C) protects from disclosure information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. §552(b)(7)(C). "Exemption 7(C)'s protection of personal

28

privacy is not absolute . . . [T]he proper approach to [a] request under a privacy based exemption such as 7(C) is a *de novo* balancing test, weighing the privacy interest and the extent to which it is invaded on the one hand, against the public benefit that would result from disclosure, on the other." Lame, 654 F.2d at 922-23 (quoting Ferri, 645 F.2d at 1217).

In this case, pursuant to exemption (b)(7)(C), the defendants redacted the names and identifying information of FBI agents and support employees, third parties who were of investigative interest to the FBI or local authorities, third parties merely mentioned, local law enforcement personnel, third parties who provided information, and non-FBI federal employees. The Third Circuit has recognized "that individuals involved in a criminal investigation - including suspects, witnesses, interviewees, and investigators - possess privacy interests, cognizable under Exemption 7(C), in not having their names revealed in connection with disclosure of the fact and subject matter of the investigation." Davin, 60 F.3d at 1058 (quoting Landano v. U.S. Dep't of Justice, 956 F.2d 422, 426 (3d Cir. 1992)(citations omitted), vacated in part on other grounds and remanded, 508 U.S. 165 (1993))[11]. See also Nat'l

---

[11]The Third Circuit's opinion in Landano addressed both 5 U.S.C. §552(b)(7)(C) and 5 U.S.C. §552(b)(7)(D). The Supreme Court's opinion
(continued...)

Archives and Records Admin. v. Favish, 541 U.S. 157, 166 (2004); Reporters Committee, 489 U.S. at 774-775; Manna v. U.S. Dep't of Justice, 51 F.3d 1158, 1166 (3d Cir. 1995); Davin, 60 F.3d at 1058. The Third Circuit has stated:

> Suspects of the investigation have the most obvious privacy interest in not having their identities . . . revealed. However, disclosure of the names of interviewees and witnesses may result in embarrassment and harassment to them as well. Criminal investigations turn up a myriad of details about the personal lives of witnesses and interviewees and for some, disclosure of the fact of cooperation with the investigation may itself result in reprisals or strained personal relationships. Moreover . . . many people may have reason to seek out and question those who have supplied information in the course of a criminal investigation.

Landano, 956 F.2d at 426. Law enforcement personnel, like private individuals, also have a significant interest in keeping their identities secret. See Id. at 426-27.

However, when balancing the private and public interests under exemption (b)(7)(C), the court must determine the relative strength of an individual's privacy interest. In McDonnell, the Third Circuit found that "[p]ersons who are deceased have no privacy interest in nondisclosure of their identities" pursuant to exemption (b)(7)(C). McDonnell, 4 F.3d at 1257. The

---

[11](...continued)
discussed only § 552(b)(7)(D).

Third Circuit later held in Davin that it is within the discretion of the court to require an agency to demonstrate that the individuals upon whose behalf it claims the privacy exemption are, in fact, alive. Davin, 60 F.3d at 1059. In exercising this discretion, the Third Circuit found that the court should consider such factors as the number of named individuals that must be investigated and the age of the requested records. If the number of individuals is not excessive, the agency could be required to determine whether the individuals are alive before asserting a privacy interest on their behalf. Id. The Third Circuit found that, after a sufficient passage of time, the probability of the named individuals remaining alive diminishes and, under such circumstances, it would be unreasonable for the court not to assume that many of the individuals named in the requested records have died, thereby negating a privacy interest unless proving otherwise. Id.

In the instant case, the court has determined that the (b)(7)(C) exemption has been cited by the defendants on 116 pages of the materials responsive to the plaintiff's request. (See Doc. No. 63, pp. 19-20 for Bates page citations). It cannot be determined with certainty, however, how many individuals the redactions on these pages involve. Concerning the passage of time, the record demonstrates that the investigations involved began some

thirty years ago. While it may be that some of the individuals involved have since passed away, there is no way to make this determination based upon the defendants' filing. This information would be of no consequence, however, if the plaintiff has not adequately set forth the public interest in having the names of these individuals released.

The only relevant public interest for purposes of Exemption (b)(7)(C) is that of shedding light on the agency's performance of its statutory duties. Davis v. United States Dep't of Justice, 968 F.2d 1276, 1282 (D.C.Cir.1992) (quoting Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989)). The plaintiff has made his FOIA request in an attempt to support his belief that members of the FBI conspired to commit perjury at his trials. The plaintiff argues that the alleged impropriety of the agency's members overrides any privacy interests of the individuals involved. Where exposing possible government impropriety provides the basis for overriding a privacy interest, the Supreme Court has held that exemption (b)(7)(C) requires the FOIA requester to make a significant evidentiary showing:

> We hold that, where there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish

more than a bare suspicion in order to obtain disclosure. Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.

Baez v. F.B.I., 443 F.Supp.2d 717 (E.D.Pa. 2006)(quoting Favish, 541 U.S. at 174).

In this case, while the plaintiff has provided the affidavits of two individuals which indicate that they were informed by the plaintiff's former appellate counsel that there is information which exists which could be exculpatory to the plaintiff, the plaintiff himself indicates that this information is contained in additional files which have not been released to him. The plaintiff has not established that the information in the documents at issue here and specifically the names of the individuals withheld would establish any impropriety on the part of the FBI. Moreover, the court does not see how the release of the names at issue would shed any additional light on the operations of the FBI when, in substantial part, the investigatory files have been released.

In light of the foregoing, it is recommended that the defendants' motion for summary judgment be granted with respect to the exemptions claimed pursuant to (b)(6) and (b)(7)(C).

Next, the plaintiff argues that in order to establish an exemption under

(b)(7)(D) the defendants must establish that the particular source spoke with the understanding that communications would remain confidential[12]. For claims of express promises of confidentiality, the plaintiff argues that the defendants must produce evidence of its alleged policy and practice of giving all symbol numbered informants or code name sources express assurances of confidentiality, evidence that the policy was in force throughout the years spanned by the documents at issue and evidence that the policy was applied to each of the investigations and in each case in which the document or portion of a document has been withheld. (Doc. No. 66, pp. 5-6, 7).

Exemption (b)(7)(D) excepts from disclosure records or information compiled for law enforcement purposes[13], but only to the extent that the

---

[12]The court presumes that the plaintiff is raising challenges to the exemptions claimed under both (b)(7)(D)-1 and (b)(7)(D)-2.

[13]The plaintiff gives some indication that he also challenges the defendants' assertion that the records at issue were compiled as a result of the FBI's legitimate law enforcement investigation arguing that the defendants' investigative activities that give rise to the documents sought must be related to the enforcement of federal laws, but that he was tried and convicted of murder in the state courts. (Doc. No. 66, p. 5). The plaintiff readily admits, however, that he was also convicted in the United States District Court for the Middle District of Pennsylvania in Criminal Case No. 81-2853 (mail fraud, arson), and Criminal Case No. 81-2854 (conspiracy to transport stolen goods in interstate commerce, possession of a firearm by a convicted felon, and possession of an unregistered firearm).

The defendants' declaration provides that law enforcement agencies
(continued...)

production:

> could reasonably be expected to disclose the identity of a confidential source, . . . which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. §552(b)(7)(D).

A source is considered a "confidential source" only "if the source 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could reasonably be inferred.'" U.S. Dep't of Justice v. Landano, 508 U.S. 165, 172 (1993)(quoting H.R.Conf.Rep. No. 1200, 93rd Cong., 2d Sess. 13 (1974)). If an agency

---

[13](...continued)
such as the FBI must demonstrate that the records at issue are related to the enforcement of federal laws and that the enforcement activity is within the law enforcement duty of that agency. (Doc. No. 63, p. 16). In this case, the defendants' declaration provides that the records responsive to the plaintiff's request relate to the plaintiff's involvement in a conspiracy to commit interstate transportation of stolen property and conspiring with others to commit mail fraud, arson, armed robbery and burglary. For example, File No. 87-HQ-150616, relates to the investigation of the plaintiff for interstate transportation of stolen property. (Doc. No. 63, p. 7). The defendants' declaration further provides that the FBI has investigative jurisdiction over related federal criminal statutes including 18 U.S.C. §2314 (transportation of stolen goods), 18 U.S.C. §371 (conspiracy), and 18 U.S.C. §1341 (frauds and swindles). (Doc. No. 63, p. 16). Thus, the defendants have established that the records or information at issue were compiled for federal law enforcement purposes which are within the duty of the FBI.

attempts to withhold information under exemption (b)(7)(D)-1 claiming express assurances of confidentiality, "the agency is required to come forward with probative evidence that the source did in fact receive an express grant of confidentiality." Davin, 60 F.3d at 1061. Such evidence may take many forms, such as notations on the face of the withheld document, an official's personal knowledge about the source, a statement from the source, or documents discussing practices or policies for dealing with the source at issue or similarly situated sources. Campbell v. Dep't of Justice, 164 F.3d 20, 34 (D.C.Cir.1998) (quoting Davin, 60 F.3d at 1061).

In this case, the defendants' supplemental Vaughn declaration provides:

> Numerous confidential sources report to the FBI on a regular basis and are "informants within the common meaning of the term in various criminal and national security intelligence investigations. During the course of an investigation, individuals are interviewed under circumstances from which an assurance of confidentiality can reasonably be inferred. These individuals are considered to be confidential sources since they furnish information only with the understanding that their identities and the information provided will not be divulged outside the FBI. Information provided by these individuals is singular in nature and if released, could reveal the informant's identity.
>
> Releasing the specific information provided by these sources may reveal a confidential source's identity. The release of a source's identity could forever remove that source as a future means of obtaining information. In addition when the identity is revealed, that revelation has a chilling effect on the activities and cooperation of other sources. It is only with the understanding of complete confidentiality (whether express or implied) that the aid

of such sources can be enlisted, and only through this confidence that these sources can be persuaded to continue providing valuable assistance in the future. Those who provide information in these investigations should be secure in the knowledge that their assistance and their identities will be held in confidence. Therefore, the identities of these confidential sources, as well as any specific information provided by them which would identify them, have been protected pursuant to FOIA Exemption (b)(7)(D).

*   *   *

Exemption (b)(7)(D)-1 has been asserted to exempt from disclosure the names and other identifying information of individuals who provided information and cooperated with the FBI in the investigation of the criminal activities of plaintiff and others under an express assurance of confidentiality. The activities related to conspiracy to commit interstate transportation of stolen property, conspiring with others to commit mail fraud, arson, armed robbery and burglary. These individuals cooperated with the FBI and provided valuable information with the express understanding that their identities and any information which would tend to identify them would only be used for law enforcement purposes and not released to the public. Those individuals in this case who specifically requested that their identities remain confidential clearly warrant the protection of Exemption (b)(7)(D). Their request for confidentiality alone evidence the confidential nature under which the information was provided.

In this instance, the FBI has protected both the identities of these cooperating individuals and any specific information provided by them which could possibly reveal their identities to persons who are knowledgeable of this investigation. Such identifying information includes, but is not limited to, telephone numbers, home addresses, and the nature and circumstances of their association with the plaintiff. Given the criminal activities of the subjects of this FBI investigation, public disclosure of the identities of individuals who provided valuable assistance to the FBI would subject them to embarrassment, harassment, physical violence, or other forms of reprisal. In addition, disclosure of the identities of persons interviewed under such implied or express

37

assurances of confidentiality would have a chilling effect on the activities and cooperation of other current and future sources of information. The FBI has found through experience that it is only with the understanding of complete confidentiality that the assistance and cooperation of such persons can be enlisted and only through this assurance that these individuals can be persuaded to continue providing valuable assistance in the future. Accordingly, since release of this information could reasonably be expected to disclose the identities of these confidential sources, the FBI has properly asserted FOIA Exemption (b)(7)(D) to protect the names and other identifying information of these individuals who provided information to and cooperated with the FBI in this criminal investigation of plaintiff and other individuals under express assurances of confidentiality.

(Doc. No. 63, pp. 25-27).

The court has reviewed each of the nineteen pages on which exemption (b)(7)(D)-1 has been claimed, thirteen of which have been released in substantial part and six of which have been withheld in their entirety[14], (Doc. No. 63, Bates pgs. 34-36, 58, 60, 239, 241-42, 245-46, 248-50, 259, 278, 280, 295-96, 306), as well as the narrative summarizations related thereto, (Doc. No. 63, pgs. 55-57, 72-73, 75, 165-66, 167-68, 173-74, 176, 177-78, 187, 198-99, 201, 214-15, 224-25). Within these pages are notations indicating that the source providing information to the FBI requested that his

---

[14]The court notes that for five of these pages the standard Deleted Page Information Sheet was provided. For the sixth, Bates pg. 34, the page was actually released, but all material information was redacted.

identity be protected and he was, in fact, given protected status. For example, one of these pages provides "Details - Captioned case has been ongoing since January 7, 1980, and an individual **who requested that his identity be protected** advised of [redacted] . . ." (Doc. No. 63, Bates pg. 60)(emphasis added). Another provides: "Administrative: Consenting party is [extracted] **(Protect)**." (Doc. No. 63, Bates pg. 58)(emphasis added). The context of these notations makes it sufficiently clear to the court that the informant requested and was granted express confidentiality. The court finds therefore that the defendants have met their burden of establishing an express grant of confidentiality.

In addition to claiming that sources were given express assurances of confidentiality, the defendants further contend that some sources gave the FBI information under an implied assurance of confidentiality. When an agency claims an implied assurance of confidentiality, the proper inquiry is "whether the particular source spoke with an understanding that the communication would remain confidential." Landano, 508 U.S. at 172. An implied assurance of confidentiality may be inferred from evidence showing the circumstances surrounding the imparting of the information, including the nature of the criminal investigation and the informant's relationship to the

target. Id.

The defendants' supplemental materials in this case provide:

Exemption (b)(7)(D)-2 has been asserted to protect the names, identifying information of individuals who provided information and cooperated with the FBI and/or other law enforcement agencies in the investigation of the criminal activities of plaintiff and others under an implied assurance of confidentiality. The activities related to conspiracy to commit interstate transportation of stolen property, conspiring with others to commit mail fraud, arson, armed robbery and burglary. Information provided by these third parties is singular in nature. Plaintiff and other subjects were arrested, tried and convicted for these crimes. It is reasonable to assume these individuals would not have provided information other than based on an implied assumption of confidentiality.

In this instance, the FBI has protected the identities of these cooperating individuals and any specific information provided by them as well as any circumstances which could possibly reveal their identities to persons who are knowledgeable regarding this investigation. Such identifying information includes telephone numbers, home addresses and the nature and circumstances of their association with plaintiff. In light of the extensive criminal activities involved in this case – conspiracy to commit interstate transportation of stolen property, conspiring with others to commit mail fraud, arson, armed robbery and burglary – disclosure of the identities of these individuals as well as the valuable information they provided could subject them to harassment or even violent reprisal. Accordingly, since the disclosure of this information could reasonably be expected to disclose the identities of these confidential sources, the FBI has properly withheld this information pursuant to FOIA Exemption (b)(7)(D)-2.

(Doc. No. 63, pp. 27-28).

The court finds that given the nature of the crimes being investigated in

this case, it is reasonable to infer that cooperating individuals providing information to the FBI concerning this case spoke with an understanding that the communication would remain confidential.

The court has reviewed each of the eight pages on which exemption (b)(7)(D)-2 has been claimed, all of which have been released in substantial part, (Doc. No. 63, Bates pgs. 31, 53, 58-59, 61, 72, 80, 281), as well as the defendants' narrative summarizations of each page, (Doc. No. 63, pgs. 54, 68-69, 72-73, 74, 75, 81-82, 88-89, 202-03). With the exception of one redaction[15], for each of the redactions, the defendants have provided in their supplemental Vaughn index an explanation of the redacted material, such as whether the information is the name of the individual or information given by the individual which could result in the individual being identified. The defendants have, of course, provided the exemption which is being claimed, and have identified the justification for withholding that information, including the potential for harm which may come to the individual should his identity be disclosed. The defendants have related this justification to the particular facts

---

[15]On Bates page 31, exemption (b)(7)(D)-2 is used for the last redaction. However, the defendants' supplemental Vaughn index does not set forth the reason for asserting that exemption. In the alternative, however, the defendants have set forth (b)(6)-2 and (b)(7)(C)-2 as bases for this exemption. (Doc. No. 63, p. 54, Bates pg. 31).

of this case given the nature of the investigation and the individuals involved.

Considering the above, the court finds the defendants' supplemental Vaughn declaration factually adequate with respect to the exemptions claimed pursuant to (b)(7)(D) and, in addition, that the defendants' supplemental declaration provides adequate basis upon which to find that the defendants have properly withheld these materials pursuant to exemption (b)(7)(D)-2. Therefore, the court recommends that the defendants' motion for summary judgment be granted on this basis.

Regarding the defendants' withholding of materials pursuant to exemption (b)(2)-1[16], the plaintiff argues that the defendants have failed to demonstrate a specific contextual link between the redacted material and the exemption claimed by the defendants[17]. (Doc. No. 66, pp. 6-7).

Exemption (b)(2) shields from disclosure information that is "related solely to the internal personnel rules and practices of an agency." 5 U.S.C.

---

[16]The plaintiff only specifically challenges the exemptions claimed pursuant to (b)(2)-1. Therefore, the other exemptions utilized under (b)(2) will not be discussed herein.

[17]The court notes that, also in this paragraph, the plaintiff again argues that the defendants may only withhold the identities of living witnesses and discusses the balancing of his right to know the identity of these individuals against the individuals' privacy interests. However, as discussed herein, exemption (b)(2)-1 contains no such balancing test.

§552(b)(2). The phrase "personnel rules and practices" is interpreted to include not only "minor employment matters," but also "other rules and practices governing agency personnel." Sellers v. U.S. Dep't of Justice, 684 F.Supp.2d 149 (D.D.C. 2010)(citing Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1056 (D.C.Cir. 1981)(en banc)). The "information need not actually be 'rules and practices' to qualify under exemption 2, as the statute provides that matter 'related' to rules and practices is also exempt." Id. (quoting Schwaner v. U.S. Dep't of the Air Force, 898 F.2d 793, 795 (D.C.Cir. 1990)(emphasis in original)). Exemption 2 applies if the information that is sought meets two criteria: (1) such information must be "used for predominantly internal purposes"; and (2) the agency must show either that "disclosure may risk circumvention of agency regulation," or that "the material relates to trivial administrative matters of no genuine public interest." Id. (citations omitted). "Predominantly internal documents[,] the disclosure of which would risk circumvention of agency statutes[,] are protected by the so-called 'high 2' exemption." Id. (quoting Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C.Cir.1992)). "High 2" exempt information is "not limited . . . to situations where penal or enforcement statutes could be circumvented." Id. (citing Schiller at 1208).

43

The defendants' supplemental Vaughn declaration, as did the original declaration, provides that exemption (b)(2)-1 has been asserted to withhold certain information contained in FBI Form FD-515. (Doc. No. 63, p. 13). A Form FD-515 is used to report investigative accomplishments and is also used for statistical purposes. (Id.). Specifically, the defendants' declaration provides that the FD-515 form is submitted by a special agent at various stages in an investigation to report statistically important events such as indictments, arrests and convictions, or the recovery of stolen property. The declaration provides that this form contains a list of investigative techniques under the heading "Investigative Assistance or Technique Used" which, if utilized during an investigation, are rated numerically to memorialize their effectiveness. If the form contains a numerical rating adjacent to one or more of the listed investigative techniques, all columns of rating spacings are excised in order to preclude disclosure of both the particular investigative techniques used in the investigation and the effectiveness of the individual techniques. (Id., pp. 13-14). Because this information relates solely to the FBI's internal practices, because disclosure would not serve any public interest, and because disclosure would impede the FBI's effectiveness and potentially aid in circumvention of the technique if disclosed, the defendants'

44

materials provide that this information was redacted from the materials provided to the plaintiff. (Id., p. 14).

The court has reviewed each of the eleven pages on which this exemption was relied upon to withhold information, (Doc. No. 63, Bates pages 233-234, 236, 241, 243-45, 247, 249, 258, 304), as well as the narrative summarizations related thereto, (Doc. No. 63, pp. 157-58, 159-60, 162-63, 169-72, 175-76, 177-78, 186-87, 222-23). Of the eleven pages, eight pages have been released in substantial part and three have been withheld in their entirety[18]. For each page released in substantial part on which the (b)(2)-1 exemption is relied upon, it is clear that the information withheld is the ratings information under the section entitled "Investigative Assistance or Technique Used.[19]" In the individual summarizations, referring to the section of the form

---

[18]With respect to the three pages withheld in their entirety, the defendants' materials provide that they are the same Accomplishment Reports containing ratings information as in the disclosed materials but, in addition to having the ratings excludable pursuant to (b)(2)-1, they contain information excludable under other exemptions. (Doc. No. 63, Bates Nos. 241, 245, 249).

[19]As for the three pages of documents which have been withheld in their entirety, each is described as an Accomplishment Report, which would contain the same section for "Investigative Assistance or Technique Used" as the released reports. To the extent that the defendants provide that the ratings information has been withheld on these pages pursuant to (b)(2)-1, their declaration is entitled to a presumption of good faith. Brown v. U.S. Dep't (continued...)

which rates the investigative techniques, the defendants' declaration provides that this information has been withheld pursuant to (b)(2)-1 because release of this information, which consists of a specific investigative technique, could enable criminals (such as the plaintiff) to educate themselves about the techniques employed for the location and apprehension of individuals and, therefore, allow these individuals to take countermeasures to circumvent the effectiveness of these techniques and to continue to violate the law.

Despite the plaintiff's claim to the contrary, a review of the defendants' supplemental declaration, including the narrative pages and those documents released in substantial part, establishes that the defendants have provided a contextual link between the (b)(2)-1 exemption claimed and the information withheld. Moreover, although the defendants essentially continue to rely on a categorical justification for the withholding of this information pursuant to (b)(2)-1, it is important to note that the court in Davin expressly declined to outlaw the "categorical approach," but instead required better explanations through the filing of "affidavits describing the material withheld and detailing why it fits within the claimed exemption." Davin, 60 F.3d at 1050. The same

---

[19](...continued)
of Justice, --- F.Supp.2d ---, 2010 WL 3398866 (D.D.C. 2010)(citations omitted).

justification for the withholding of the rating information from the Form FD-515 relied upon by the defendants in this case has been upheld by other courts. Sellers v. U.S. Dep't of Justice, 684 F.Supp.2d at 164 (affirming the withholding of the ratings column of the form FD-515 under Exemption 7(E)[20])(citing Concepción v. Fed. Bureau of Investigation, 606 F.Supp.2d 14, 43 (D.D.C. 2009)(concluding that the FBI properly withheld both the investigative accomplishments report's rating column and information that would reveal techniques and procedures for conducting investigations and undercover operations under Exemption 2 and 7(E)); Peay v. Dep't of Justice, No. 04-1859, 2007 WL 788871, at *6 (D.D.C. 2007)(concluding that the FBI properly redacted the "entire rating column [of form FD-515] in order to protect . . . the specific techniques that were and were not used by the FBI during its investigation of plaintiff and others"); Perrone v. Fed. Bureau of Investigation, 908 F.Supp. 24, 28 (D.D.C. 1995)(concluding that the FBI FD-515 form properly is withheld under Exemption 7(E) because "disclosure of this information would help plaintiff or potential criminals predict future

---

[20]The court notes that exemption (b)(7)(E)-1 is used in conjunction with (b)(2)-1. If a court determines that information properly was withheld under one exemption, it need not determine whether another exemption applies to that same information. Simon v. Dep't of Justice, 980 F.2d 782, 784-85 (D.C.Cir. 1992).

investigative actions by the FBI and consequently employ countermeasures to neutralize those techniques")).

Considering the above, the court finds the defendants' supplemental index factually adequate in relation to the (2)(b)-1 exemptions and, in addition, that the defendants properly withheld information pursuant to this exemption. Therefore, the defendants' motion for summary judgment should be granted with respect to the exemptions claimed under (2)(b)-1.

Concerning exemption (b)(7)(E)[21], the plaintiff argues that this exemption may not be used to withhold routine techniques and procedures already known to the public, such as ballistic tests, fingerprinting, and other scientific tests commonly known. The plaintiff argues that the defendants' supplemental Vaughn declaration has failed to provide the court with sufficient additional facts to support the exemptions claimed under (b)(7)(E). (Doc. No. 66, p. 9).

Section 552(b)(7)(E) provides exemption from disclosure for:

---

[21]The defendants have used exemption (b)(7)(E)-1 in conjunction with exemption (b)(2)-1. Because the court has found the supplemental Vaughn declaration adequate and the related portions of the record properly excludable under exemption (b)(2)-1, the court need not discuss the alternative exemption of (7)(E)-1. See n.17.

records or information compiled for law enforcement purposes[22], but only to the extent that the production of such law enforcement records or information . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosures could reasonably be expected to risk circumvention of the law.

As the plaintiff has argued, the scope of this exception does not include routine techniques and procedures already well known to the public, such as ballistics tests, fingerprinting, and other scientific tests or commonly known techniques. Ferri v. Bell, 645 F.2d 1213, 1224 (3d Cir. 1981).

The defendants have set forth in their supplemental Vaughn declaration, as they did in their original declaration, that exemption (b)(7)(E)-2 has been used to withhold information which would reveal the use of specific investigative techniques, the benefit of which could be diminished if the actual techniques were released in this matter. The declaration provides that this, in turn, could facilitate the accumulation of information by investigative subjects regarding the circumstances under which the specific techniques were used or requested and the value of information obtained. Such disclosure, according to the defendants' declaration, could enable subjects of FBI investigations to circumvent similar currently used techniques. The

---

[22]See n.13.

defendants' materials provide that the release of this type of information could enable criminals to educate themselves about the techniques employed for the location and apprehension of individuals and, therefore, allow these individuals to take countermeasures to circumvent the effectiveness of these techniques to continue to violate the law.

The court has reviewed the eighteen pages on which information has been withheld pursuant to exemption (b)(7)(E). (Doc. No. 63, Bates Nos. 46, 48-49, 52, 54, 57-58, 60-61, 81-82, 89, 94, 252-56). The first thirteen pages contain exemptions claimed pursuant to (b)(7)(E)-2, all of which have been released in substantial part. For each of these pages, the defendants' supplemental Vaughn index provides individual summarizations with information relating to the content of the document as set forth above. (Doc. No. 63, p. 62-64, 66, 69, 71-72, 73, 75, 90-91, 96-97, 98). The individual summarizations provide that for each of the exemptions claimed pursuant to (b)(7)(E)-2, the redacted information would reveal the use of specific investigative techniques and that the release of this information about the specific investigative technique could enable criminals to educate themselves about the techniques employed for the location and apprehension of individuals and, therefore, allow these individuals to take countermeasures to

circumvent the effectiveness of these techniques to continue to violate the law. The court finds that this categorical justification for the claimed exemptions under (b)(7)(E)-2 is factually insufficient to make a determination as to whether the information on these pages was properly withheld. In reviewing the actual documents, it is clear given the context of the redactions that at least some of the information relates to monies expended in relation to the investigation of the plaintiff. (See e.g., Doc. No. 63, Bates pgs. 46, 48-49, 52, 81-82). This information would be properly exempted under (b)(7)(E)-2. See Curcio v. FBI, 1990 WL 179605, *2 (D.D.C.)(information relating to FBI expenditures made in connection with investigation are properly withheld under exemption 2[23])(citations omitted). However, factually, the court cannot ascertain from the supplemental Vaughn index whether the remaining exclusions are justified. To this extent, neither the context of the information, nor the general justification provided in the supplemental Vaughn index that these materials contain "investigative techniques," permit the court to determine whether or not the excluded information falls outside of that information which would be routine techniques or those known to the general

---

[23]Again, exemption (b)(2) and exemption (b)(7) are used in conjunction. A finding of excludability under one or the other would be sufficient to justify the other.

public[24].

In light of the above, it is recommended that the defendants' motion for summary judgment be denied with respect to that information withheld pursuant to (b)(7)(E)-2 which is not related to monies expended in relation to the investigation of the plaintiff.

With respect to the remaining five pages withheld pursuant to (b)(7)(E), the defendants' supplemental Vaughn index provides that these materials were withheld pursuant to (b)(7)(E)-3, which relates to polygraph material. Each of these pages have been withheld in their entirety[25]. The defendants' supplemental Vaughn index provides that the information redacted pursuant to (b)(7)(E)-3 contained information relating to the numerical ratings on polygraph charts; the make, model, and serial number of the polygraph

---

[24]While the court understands the inherent difficulty of the government in trying to describe that information which they believe should not be disclosed, the court believes that the defendants could have provided more factual information generally describing the investigative technique without actually disclosing the information. For instance, the court was able to determine that some of the information withheld related to monies expended on the investigation of the plaintiff. In relation to other redactions, the defendants, for example, may have stated in their declaration that the investigative technique involved was of a type not generally known to the public.

[25]The defendants' materials provide that in addition to exemption (b)(7)(E)-3, numerous other exemptions were relied upon in withholding these documents in their entirety.

machine that is utilized on a recurring basis during the course of the criminal and national security investigations conducted by the FBI; and the type and series of tests given to the potential suspect. The defendants' supplemental materials provide that this type of information is generally not known to the public and that to release this polygraph information would enable criminals and others who could be a threat to national security to educate themselves about the capabilities of such equipment, and, consequently, take countermeasures to defeat the effectiveness of the polygraph and impede future investigations on themselves. Additionally, the defendants' materials provide that the protection of such information from disclosure increases the difficulty for potential examinees to attempt to employ countermeasures, thus making the use of countermeasures easier for the polygraph examiner to detect. Even though there are publications which deal solely with polygraph techniques, the defendants' materials provide that none of them specifically address the various procedures and intricacies of the examination process sufficiently to permit someone to learn how the techniques are actually implemented by the FBI. (Doc. No. 63, pp. 30-31).

With respect to these documents, although they have been withheld in their entirety, it is clear from the individualized descriptions of the documents

that they contain information relating to polygraph examinations. The defendants' supplemental Vaughn declaration provides that the first document (two pages) is a polygraph examination report, the second (two pages) is a polygraph examination worksheet, and the final (one page) is an accomplishment report. In context, these pages follow a memorandum dated April 12, 1983, which reflects the following in relevant part:

> POLYGRAPH MATTERS
> A technical review of the polygraph examination documents pertaining to the examination of [extracted], on 3/18/83 has been completed. This review disclosed that the examination utilized excellent procedures throughout and review personnel concur with the results of the examination.
> All documents are enclosed herewith, for appropriate filing.
> Enclosures (5)

(Doc. No. 63, Bates pg. 251). Following this memo are the five redacted pages. Given this information, the supplemental Vaughn declaration is factually sufficient to conclude that information on the five redacted pages contains information relating to a polygraph examination which is excludable pursuant to (b)(7)(E)-3. As the release of particular details with regard to polygraph testing could foreseeably circumvent the entire process, these materials are properly excluded. See Coleman v. F.B.I., 13 F.Supp.2d 75 (D.D.C.1998)(citing Perrone v. FBI, 908 F.Supp. 24, 28 (D.D.C. 1995)(exposure of questions and their sequence would depreciate the

54

effectiveness of the test)).

In light of the above, the court finds the defendants' supplemental Vaughn declaration factually sufficient with respect to the exemptions claimed under (b)(7)(E)-3 and further that the materials pursuant to that exemption were properly withheld. The defendants therefore should be granted summary judgment on this basis.

On the basis of the foregoing, **IT IS RECOMMENDED THAT:**

**(1)** the plaintiff's motion for summary judgment, **(Doc. No. 20)**, be **DENIED**; and

**(2)** the defendants' motion for summary judgment, **(Doc. No. 29)**, be **GRANTED** with the exception of the exemptions claimed pursuant to (b)(7)(E)-2 which are not related to monies expended in relation to the investigations of the plaintiff[26].

**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:** September 10, 2010

O:\shared\REPORTS\2008 Reports\08-1565-02.wpd

---

[26]For the convenience of the reader, the court has attached copies of unpublished opinions cited within this document.