**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JOSEPH P. FRANKENBERRY

Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATION AND U.S. DEPARTMENT OF JUSTICE,

Defendants.

CIVIL ACTION NO. 3:08-1565

(JUDGE CAPUTO)

(MAGISTRATE JUDGE MANNION)

## MEMORANDUM

Presently before the Court are Magistrate Judge Mannion's Report and Recommendation ("R & R") of September 10, 2010 (Doc. 71), Plaintiff Joseph P. Frankenberry's Objections to the Magistrate Judge's R & R (Doc. 76), Defendants' Objections to the Magistrate Judge's R & R (Doc. 81), Plaintiff's Renewed Motion for Order Compelling Answer to Interrogatories (Doc. 72), and Plaintiff's Motion to Strike Defendants' Brief in Opposition to the Magistrate Judge's Report and Recommendation (Doc. 80.) Magistrate Judge Mannion recommended that Plaintiff's Motion for Summary Judgment be denied and that Defendants' Motion for Summary Judgment be granted with the exception of the documents withheld pursuant to 5 U.S.C.A. § 555(b)(7)(E)-2. Because Defendants adequately searched for records pertinent to Plaintiff's Freedom of Information Act ("FOIA") request, the Court will adopt Magistrate Judge Mannion's recommendation to deny Plaintiff summary judgment. Defendants, however, will be denied summary judgment as to documents withheld pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D)-1, and (b)(7)(E)-2 because Defendants fail to establish a proper basis for withholding this information. Thus, the Court will adopt in part and reject in part Magistrate Judge Mannion's recommendation and will recommit the case to the Magistrate Judge.

## I. Background

### 1. Factual History

As detailed in the Court's April 7, 2010 Memorandum and Order (Doc. 56), Plaintiff

sent a Freedom of Information Act ("FOIA")/ Privacy Act request to FBI Headquarters on November 16, 2009. (Doc. 31, Ex. A.) Plaintiff's request sought all records pertaining to his previous criminal trial, as well as statements, interviews, photographs, and taped conversations pertaining to "all defendants who plead guilty to the Armed-Robbery of Platinum cobalt (sic) Alloy, valued [at] $260,000 from Lancaster Metal Science Corp . . . on January 7, 1980." (Doc. 31, Ex. A.) Plaintiff similarly sought records in the FBI's possession relating to his criminal proceedings in state court. (Doc. 31, Ex. A.)

On December 16, 2006, the FBI acknowledged receipt of Plaintiff's FOIA request and assigned him a Freedom of Information-Privacy Acts request number ("FOIPA number"). (Doc. 31, Ex. B.) On May 10, 2007, Plaintiff was informed that the FBI had performed a search for the documents he had requested. The search produced 321 documents, only 267 of which were to be released; the remaining documents were deleted "to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision." (Doc. 31, Ex. C.) Plaintiff administratively appealed the FBI's release and deletion of the documents on May 21, 2007. (Doc. 1.) The FBI never responded to the appeal, and Plaintiff filed the Complaint in the instant action on August 21, 2008, alleging violations of the FOIA, 5 U.S.C.A. §§ 552, 552a. (Doc. 1.)

On May 23, 2009, Plaintiff filed a Motion for Summary Judgment. (Doc. 20.) Defendants later filed a Motion for Summary Judgment on October 8, 2009. Included with Defendants' Motion for Summary Judgment was a *Vaughn* index prepared by David M. Hardy, Section Chief of Record/Information Dissemination Section. (Doc. 31.) The Hardy Declaration explained the FBI's Central Records System and a summary of the "justification categories" for the exclusions, deletions, and excisions made in the records. (Doc. 31.) For each exemption claimed under the FOIA, the Hardy Declaration contained a brief one or two paragraph explanation of the exemption, made broad claims that the exemption applied to the documents sought by Plaintiff, and then referenced the pages where the exemption was claimed. (Doc. 31.) The Hardy Declaration was accompanied by the documents Plaintiff requested with the exempted portions deleted and corresponding references to the

exemption cited for that deletion. (Doc. 31, Ex. C.)

**2. The January 2010 Report and Recommendation**

On January 29, 2010, Magistrate Judge Mannion issued a R & R recommending that Plaintiff's Motion for Summary Judgment be dismissed as premature, that Defendants' Motion for Summary Judgment be granted, that Plaintiff's Motion for a Temporary Restraining Order/Preliminary Injunction be denied, and that Plaintiff's Motion for Appointment of Counsel be denied as moot. (Doc. 49). After Plaintiff filed Objections to the 2010 R & R (Doc. 52) and Defendants filed their Brief in Opposition to the Objections (Doc. 55), the Court rejected in part and adopted in part the Magistrate Judge's R & R. (Doc. 56.)

In particular, the Court rejected the Magistrate Judge's January 2010 recommendation that Plaintiff's Motion for Summary Judgment be denied and that Defendants' Motion for Summary Judgment be granted. (Doc. 56.) The Court rejected the Magistrate Judge's recommendation to grant Defendants' Motion for Summary Judgment because, in applying the Third Circuit's decision in *Davin v. United States Dept. of Justice*, 60 F.3d 1043 (3d Cir. 1995), Defendants failed to provide a "specific contextual link . . . between the redacted material and the exemption claimed." (Doc. 56.) As such, the Court concluded that, "[w]ithout more, it [was] impossible . . . to engage in a proper *de novo* review of the exemptions that Defendants [used] as justification for withholding documents from Plaintiff." (Doc. 56.)

The Court also rejected the Magistrate Judge's recommendation that Plaintiff's Motion for Summary Judgment and Motion for Appointment of Counsel be denied. (Doc. 56.) Instead, the Court recommitted both motions to the Magistrate Judge for further consideration. (Doc. 56.) However, the Court did adopt the Magistrate Judge's recommendation that Plaintiff's Motion for a Temporary Restraining Order/Preliminary Injunction be denied. (Doc. 56.)

3. **Defendants' Supplemental *Vaughn* Filings**

In light of the Court's rejection of the January 2010 R & R, Magistrate Judge Mannion ordered Defendants to supplement their summary judgment motion and their *Vaughn* filings

in accordance with the Court's April 7, 2010 Memorandum and Order. (Doc. 60.) On July 20, 2010, Defendants filed their supplemental *Vaughn* declaration. (Doc. 63.) Whereas Defendants' original *Vaughn* declaration consisted of thirty-two (32) pages, the supplemental *Vaughn* declaration, again prepared by David M. Hardy (the "Supplemental Hardy Declaration") is 239 pages in length. (Doc. 63.) The Supplemental Hardy Declaration sets forth the history of Plaintiff's FOIA/Privacy Act request, provides an explanation of the FBI's records system, describes the searches conducted for records responsive to Plaintiff's request, and details the FBI's policy relating to routine automated searches of the FBI's records system. (Doc. 63.) Additionally, unlike the first declaration, the Supplemental Hardy Declaration contains narrative descriptions of each page of every document responsive to Plaintiff's request with the FBI's justification for withholding each particular category of information under the applicable statutory exemption. (Doc. 63.) Moreover, for each document, Defendants also identify the file number of the document, the document number, the Bates page number, the date of the document, the number of pages of the document, the number of pages withheld from the document, the number of pages with deletions of information from the document, and the total number of duplicate pages. (Doc. 63.) And, Defendants also provide a general description of the information redacted, the FOIA exemption under which the redacted information falls, and the reasons for Defendants' withholding the information. (Doc. 63.)

**4. The September 2010 Report and Recommendation**

On September 10, 2010, Magistrate Judge Mannion issued the Report and Recommendation presently before the Court. (Doc. 71.) The R & R recommends that Plaintiff's Motion for Summary Judgment be denied and that Defendants' Motion for Summary Judgment be granted with the exception of the documents claimed pursuant to 5 U.S.C.A. § 555(b)(7)(E)-2. (Doc. 71). The Magistrate Judge's recommendation to deny Plaintiff's motion is predicated on a finding that Defendants conducted an adequate search for records responsive to Plaintiff's request. (Doc. 71.) In recommending summary judgment for Defendants, in part, Magistrate Judge Mannion found Defendants adequately

searched for the requested documents and did not improperly withhold any relevant, non-exempt information. (Doc. 71.)

**5. Objections to the September 2010 Report and Recommendation**

On September 27, 2010, Plaintiff filed his Objections to the R & R. Plaintiff objects on the grounds that: (1) the Magistrate Judge failed to make a determination as to whether "the claimed (b)(6) and (b)(7)(C) exemptions were granted confidentiality and/or whether the persons was (sic) deceased or living"; (2) the Magistrate Judge failed to properly weigh the public and private interests; and (3) the Magistrate Judge improperly disregarded Plaintiff's supporting affidavits in his summary judgment motion. (Doc. 76). On October 12, 2010, Defendants filed their Brief in Opposition to Plaintiff's Objections (Doc. 79)[1] and on October 20, 2010, Defendants filed their Objections to the R & R. (Doc. 81). Defendants' only objection is to the Magistrate Judge's conclusion that Bates page number 54 improperly invoked FOIA exemption (b)(7)(E)-2. (Doc. 82). In particular, Defendants' claim that Frankenberry-54 was properly redacted because the redacted information "divulges the precise placement of recording devices used by the FBI to monitor conversations of criminal value in its investigations." (Doc. 82). Defendants, however, do not object to Magistrate Judge Mannion's findings regarding the (b)(7)(E)-2 exemption on the other twelve (12) pages it is claimed. The matter is now fully briefed and ripe for disposition.

## II. Discussion

**1. Applicable Legal Standards**

**A. Review of a Magistrate Judge's Report and Recommendation**

Where objections to the Magistrate Judge's report are filed, the court must conduct

---

[1] Plaintiff filed a Motion to Strike Defendants' Response Brief in Opposition to Magistrate Judge's Report and Recommendation (Doc. 80) on October 18, 2010. Based on the Court's decision to reject in part and adopt in part the Magistrate Judge's recommendation, Plaintiff's motion to strike (Doc. 80) will be denied.

a *de novo* review of the contested portions of the report, *see Sample v. Diecks*, 885 F.2d 1099, 1106 n. 3 (3d Cir.1989) (citing 28 U.S.C.A. § 636(b)(1)(c)), provided the objections are both timely and specific. *See Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir.1984). In making its *de novo* review, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C.A. § 636(b)(1); *Owens v. Beard*, 829 F.Supp. 736, 738 (M.D.Pa.1993). Although the review is *de novo*, the statute permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675–76, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F.Supp. 328, 330 (M.D.Pa.1994). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Goney*, 749 F.2d at 7. At the very least, the court should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chater*, 990 F.Supp. 375, 376–77 (M.D.Pa.1998).

**B. The Freedom of Information Act**

The FOIA was enacted by Congress “to facilitate public access to Government documents.” *United States Dep’t of State v. Ray*, 502 U.S. 164, 173, 112 S. Ct. 541, 116 L. Ed. 2d 526 (1991). As such, FOIA “requires the government and its agencies to disclose information to the public upon request.” *Cozen O’Connor v. United States Dep’t of Treasury*, 570 F. Supp. 2d 749, 764 (E.D. Pa. 2008) (citing 5 U.S.C.A. § 552(a)(3)(A)(2007)). The government need not disclose all information, however, as the public’s right to know may be outweighed by the government’s legitimate needs to keep certain information confidential. *See id*. Congress therefore created nine exemptions for when government information need not be disclosed. *See* 5 U.S.C.A. § 552(b)(1)-(9). But, in the absence of an enumerated exemption, the agency must disclose the requested information, *see Cozen O’Connor*, 570 F. Supp. 2d at 764, because the FOIA “creates a strong presumption in favor of disclosure.” *Davin v. United States Dep’t of Justice*, 60 F.3d 1043, 1049 (3d Cir. 1995). When requested information is withheld, “the district court must conduct a *de novo* review

of the record . . . and the *agency resisting disclosure bears the burden of persuasion in defending its action*." *Milton v. United States Dep't of Justice*, 783 F. Supp. 2d 55, 57 (D. D.C. 2011) (citing 5 U.S.C.A. § 552(a)(4)(B)) (emphasis added).

To properly invoke a FOIA disclosure exemption, "the agency must provide reasonably specific information that explains how the exemption applies." *Cozen O'Connor*, 570 F. Supp. 2d at 765 (citing *Am. Friends Serv. Comm. V. Dep't of Defense*, 831 F.2d 441, 444 (3d Cir. 1987); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). An agency fulfills this duty when it "provide[s] 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" *Davin*, 60 F.3d at 1050 (quoting *McDonnell v. United States*, 4 F.3d 1227, 1241 (3d Cir. 1993)). If an exemption is claimed only to part of the requested record, the agency is obligated to produce any reasonably segregable portion of the document. *See id*. at 1049 (citing 5 U.S.C.A. § 552(b)).

Agencies frequently submit *Vaughn* indexes when identifying withheld information. *See Cozen O'Connor*, 570 F. Supp. 2d at 765. A *Vaughn* index "is a detailed affidavit correlating the withheld documents with the claimed exemptions. To pass muster, a *Vaughn* index must consist of one comprehensive document, adequately describe each withheld document or redaction, state the exemption claimed, and explain why each exemption applies." *Id* (citing *Ashfar v. Dep't of State*, 702 F.2d 1125, 1144-45 (D.C. Cir. 1983)). According to the Third Circuit, while there is no set form for a *Vaughn* index, "the hallmark test is 'that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure.'" *Davin*, 60 F.3d at 1050 (citing *Hinton v. Dep't of Justice*, 844 F.2d 126, 129 (3d Cir. 1988)). Thus, an agency cannot satisfy its burden by merely citing categorical codes and providing a general description of what the codes signify. *See id*. at 1051. Instead, "an agency using justification codes must also include specific factual information concerning the documents withheld and correlate the claimed exemptions to the withheld documents." *Id*.

**C. Summary Judgment Standards**

Once the relevant documents subject to a FOIA request are identified, FOIA cases are typically resolved on summary judgment. *See Panton v. Bureau of Prisons*, No. 4:07-CV-1835, 2008 WL 4820655, at *2 (M.D. Pa. 2008) (citing *Wickwire Gavin, P.C. v. USPS*, 356 F.3d 588, 591 (4th Cir. 2004)).

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) (2). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)(2). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *See Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2D § 2727 (2d ed.1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir.1988). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material

facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256–57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

In the specific context of a FOIA action, the Court of Appeals for the District of Columbia has articulated the following standard for an agency to obtain summary judgment:

> [T]he agency must show, viewing the facts in the light most favorable to the requester, that there is no genuine issue of material fact. To meet this burden, 'the agency must demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents.' *The question is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate*. The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case. In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith.

*Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (citing *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)) (internal citations omitted) (emphasis added).

**2. Plaintiff's Motion for Summary Judgment**

On May 13, 2009, Plaintiff filed his Motion for Summary Judgment. (Doc. 20.) Magistrate Judge Mannion rejected Plaintiff's sole argument that Defendants' records search was unreasonable and recommended that Plaintiff's summary judgment motion be denied. (Doc. 71.) In reaching this conclusion, Magistrate Judge Mannion refused to consider affidavits offered in support of Plaintiff's Motion for Summary Judgment prepared by Marshall Woodley and Erik V. Huey because the affidavits failed to comply with Federal Rule of Civil Procedure 56(e). (Doc. 71.) Plaintiff objects to the recommendation as to both the Magistrate Judge's refusal to consider the Woodley and Huey Affidavits and to the finding that Defendants' search was reasonable. (Doc. 76.) The Court addresses each of

these arguments in turn.

### A. Plaintiff's Summary Judgment Affidavits

In support of Plaintiff's Motion for Summary Judgment, Plaintiff provided affidavits prepared by Marshall Woodley and Erik V. Huey. (Doc. 21.) According to Plaintiff, the affidavits establish the following materials exist and are in Defendant's possession despite Defendants' failure to produce them:

> (a) photographs identified in the complaint taken by defendants on or about January 24, 1981 as set forth in the complaint;
> (b) various investigative reports from the FBI and taped conversations on or about/before January 24, 1981;
> (c) taped conversations between informant and F.B.I. Agent, Ralph Huey, Plaintiff and Ted Slagel and James Huey via telephone and/or in person on or before January 24, 1981.

(Doc. 20.) The affidavits, however, are not based on the personal knowledge of the afffiants; instead, the affiants rely on information provided by a third-party- Plaintiff's appellate attorney, and now Judge for the United States Court of Appeals for the Third Circuit, the Honorable Thomas I. Vanaskie, who represented Plaintiff in his direct appeals in the 1980s. (Doc. 21.)

Magistrate Judge Mannion refused to consider the Woodley and Huey Affidavits in passing on Plaintiff's summary judgment motion. According to Magistrate Judge Mannion, "the plaintiff's supporting affidavits should not be considered as they do not comply with the requirements of Federal Rule of Civil Procedure 56(e). Specifically, the affidavits contain inadmissible hearsay." (Doc. 71.)

Rule 56(c)(4), which contains provisions of former Rule 56(e), provides that "[a]n affidavit or declaration used to support a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). As such, a court should not credit statements in affidavits that amount to "unsupported assertions made in the absence of personal knowledge," *Reynolds v. Dep't of Army*, 439 Fed. Appx. 150, 152 (3d Cir. 2011), and "hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment." *Smith v. City of Allentown*, 589 F.3d 684,

693 (3d Cir. 2009). Nevertheless, courts in the Third Circuit may consider "hearsay evidence produced in an affidavit opposing summary judgment . . . if the out-of-court declarant could later present the evidence through direct testimony, i.e., in a form 'that would be admissible at trial.'" *J.F. Feeser, Inc. V. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990) (quoting *Williams v. Borough of West Chester*, 891 F. 2d 458, 465-66 n.12 (3d Cir. 1989)); *see also Petruzzi's IGA Supermarkets, Inc. V. Darling-Delaware Co.*, 998 F.2d 1224, 1235 n.9 (3d Cir. 1993) (inadmissible hearsay statement can be considered on a motion for summary judgment when statement is "capable of being admissible at trial"); *Connors v. Connors*, No. 3:07-CV-2186, 2010 WL 2261450, at *7 (M.D. Pa. June 1, 2010) ("[t]he Third Circuit Court of Appeals has held that inadmissible evidence can be considered on summary judgment, so long as it is capable of being presented in an admissible form at the time of trial").

Hearsay is a statement, other than one made by the declarant, "offered in evidence to prove the truth of the matter asserted." *Flickinger v. Toys R Us, Inc.,* No. 3-10-CV-305, 2011 WL 2160493, at *6 (M.D. Pa. May 31, 2011) (citing Fed. R. Evid. 801(c)). "Whether hearsay evidence is offered to prove the truth of the matter asserted 'is a question of law .'" *Gov't of V.I. v. Muiruri*, 340 Fed. Appx. 794, 798 (3d Cir. 2009) (quoting *United States v. Sallins*, 993 F.2d 344, 346 (3d Cir. 1993)).

Here, Magistrate Judge Mannion correctly identified the statements contained in the Woodley and Huey Affidavits to be hearsay. The statements contained in the affidavits are not based on the personal knowledge of the affiants. Instead, the affiants set forth information based on the knowledge and statements of a non-testifying declarant. (Doc. 21.) As Plaintiff seeks to offer these third-party statements to prove the existence of the materials identified in Plaintiff's summary judgment motion, such statements fall within the classic definition of hearsay.

The Magistrate Judge, however, improperly concluded that the hearsay statements could not be considered on the motion for summary judgment. (Doc. 71.) As noted previously, the Third Circuit has held that courts may consider inadmissible evidence on

summary judgment if the evidence is capable of being presented in an admissible form at trial. *See, e.g., J.F. Feeser, Inc.*, 909 F.2d at 1542; *Petruzzi's IGA Supermarkets, Inc.*, 998 F.2d at 1235 n.9. Here, Magistrate Judge Mannion erred in failing to determine whether the declarant could be available to testify in future proceedings in this matter. However, even if Magistrate Judge Mannion had considered the affidavits, it would not alter the Court's decision to deny Plaintiff's motion for summary judgement because, as set forth below, Defendants conducted an adequate search for documents responsive to Plaintiff's request.

**B. The Adequacy of Defendants' Search**

Plaintiff's motion for summary judgment is premised on Defendants failure to properly establish the adequacy of the search for materials responsive to Plaintiff's request. "The relevant inquiry is not 'whether there might exist any other documents possibly relevant to the request, but rather whether the search for those documents was adequate." *Addelfattah v. United States Dep't of Homeland Sec.*, 488 F.3d 178, 182 (3d Cir. 2007) (quoting *Weisberg*, 745 F.2d at 1485). For an agency to demonstrate that the search was adequate, the agency should provide "'a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched.'" *Id* (quoting *Valenci-Lucena v. United States Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)). In essence, the search must be thorough enough to reasonably assure that files likely to contain the requested information have been searched. *See Cozen O'Connor*, 570 F. Supp. 2d at 766. The search need "not be exhaustive, [but] it must be adequate." *Id*.

The adequacy of a FOIA search depends on the circumstances of the case. *See Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981). As set forth by the District Court for the Eastern District of Pennsylvania:

> The adequacy inquiry starts with the presumption that the agency affidavits and the related searches were made in good faith. However, the good faith presumption can be overcome by contrary record evidence or evidence of bad faith. To rebut the presumption, the requester must present more than purely speculative claims about the existence and discoverability of documents. Speculation that uncovered documents may exist is insufficient to show that the agency's search was unreasonable. On the other hand, a

> well defined request coupled with facts, not speculation, that indicates materials do exist and were overlooked raises a substantial doubt whether an adequate search was performed.

*Cozen O'Connor*, 570 F. Supp. 2d at 766.

The Court, upon a *de novo* review of the record, finds that Defendants have adequately searched for documents responsive to Plaintiff's request. The procedures used by Defendants to locate documents responsive to Plaintiff's request are set forth in the Supplemental Hardy Declaration. (Doc. 63.) The Supplemental Hardy Declaration describes the FBI's records systems as follows:

> (12) The Central Records Systems ("CRS") enables the FBI to maintain information which it has acquired in the course of fulfilling its mandated law enforcement responsibilities. The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes. This system consists of a numerical sequence of files, called FBI "classifications," which are broken down according to subject matter. The subject matter of a file may relate to an individual, organization, company, publication, activity or foreign intelligence matter (or program). Certain records in the CRS are maintained at FBIHQ. Records that are pertinent to specific field offices of the FBI are maintained in those field offices. Although the CRS is primarily designed to serve as an investigative tool, the FBI searches the CRS for documents that are potentially responsive to FOIPA requests. The mechanism that the FBI uses to search the CRS is the Automated Case Support System ("ACS").
>
> (13) The retrieval of data from the CRS is made possible through the ACS using the General Indices, which are arranged in alphabetical order. The General Indices consist of index cards on various subject matters that are searched either manually or through the automated indices. The entries in the General Indices fall into two categories:
>
> (a) A "main" entry – A "main" entry, or "main" file, carries the name corresponding with a subject of a file contained in the CRS.
>
> (b) A "reference" entry – A "reference" entry, sometimes called "cross-references," are generally only a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another "main" file on a different subject matter.
>
> (14) Access to the CRS files in FBI Field Offices is also obtained through the General Indices (automated and manual), which are likewise arranged in alphabetical order, and consist of an index on various subjects, including the names of individuals and organizations. Searches made in the General Indices to locate records concerning a particular subject, such as Joseph P. Frankenberry, are made by searching the subject requested in the index. FBI Field Offices have automated indexing functions.
>
> (15) On or about October 16, 1995, the ACS system was implemented for all Field Offices, Legal Attaches ("Legats"), and FBIHQ in order to

consolidate portions of the CRS that were previously automated. ACS can be described as an internal computerized system of the CRS. Because the CRS cannot electronically query the case files for data, such as an individual's name or social security number, the required information is duplicated and moved to the ACS so that it can be searched. Over 105 million records from the CRS were converted from automated systems previously used by the FBI. Automation did not change the CRS; instead, automation has facilitated more economic and expeditious access to records maintained in the CRS.

(16) The ACS consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases:

(a) Investigative Case Management ("ICM")- ICM provides the ability to open, assign, and close investigative and administrative cases as well as set, assign, and track leads. The Office of Origin ("OO"), which sets leads for itself and other field offices, as needed, opens a case. The field offices that receive leads from the OO are referred to as Lead Offices ("Los"), formerly known as Auxiliary Offices. When a case is opened, it is assigned a Universal Case File Number ("UCFN,") which is used by all FBIHQ, as well as all FBI field offices and Legats that are conducting or assisting in the investigation. Using the file number "87-HQ-12345" as an example, an explanation of the UCFN is as follows: "87" indicates the classification for the specific type of investigation, in this case is "Interestate Transportation of Stolen Property;" "HQ" is the abbreviated form used for the OO of the investigation, in this case is Headquarters; and "12345" denotes the individual case file number for the particular investigation.

(b) Electronic Case File ("ECF")- ECF serves as the central electronic repository for the FBI's official text-based documents. ECF supports the universal serial concept in that only the creator of a document serializes it into a file. This provides a single source entry of serials into the computerized ECF system. All <u>original</u> series are maintained in the OO case file.

(c) Universal Index ("UNI")- UNI continues the universal concepts of ACS by providing a complete subject/case index to all investigative and administrative cases. Only the OO is required to index; however, the LOs may index additional information as needed. UNI, an index of approximately 105 millions records, functions to index names to cases, and to search names and cases for use in FBI investigations. Names of individuals or organizations are recorded with identifying applicable information such as date or place of birth, race, sex, locality, Social Security number, address, and/or date of event.

(17) The decision to index names other than subjects, suspects, and victims is a discretionary decision made by the FBI Special Agent ("SA")- and on occasion, support employees- assigned to work on the investigation, the Supervisory SA ("SSA") in the field office conducting the investigation, and the SSA at FBIHQ. The FBI does not index every name in its files; rather, it indexes only that information considered to be pertinent, relevant, or essential for future retrieval. Without a "key" (index) to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved. The FBI files would thus be merely archival in nature and

> could not be effectively used to serve the mandated missions of the FBI, which is to investigate violations of federal criminal and national security statutes. Therefore, the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual, such as Joseph P. Frankenberry.

(Doc. 63.)

As to the specific search for records responsive to Plaintiff's request, the Supplemental Hardy Declaration provides:

> (18) In response to plaintiff's FBIHQ request, the FBI conducted a search of the FBIHQ indices to the CRS to identify all potentially responsive files indexed to Joseph P. Frankenberry. This search would locate records using the phonetic sounds of the last, middle, and first names relating to the following name: "Joseph P. Frankenberry." The FBI also used plaintiff's date of birth to facilitate the identification of requested records. As a result of this search, three main files were identified as responsive. After careful review, the FBI processed and released non-exempt information from files 95-HQ-241933, 87-HQ-150616, and 183-HQ-4763.
>
> (19) The FBI's current policy is to search for and identify only "main" files responsive to FOIA/PA requests at the initial stage, and as a result, no cross-references were included in the FBI's initial response. Subsequently, the FBI conducted an additional search of the CRS to locate cross-references responsive to plaintiff's request using the same search terms as above: "Joseph P. Frankenberry." The second search of the CRS revealed a cross-reference maintained on microfilm in file 17-19658 (Veterans' Administration Matters); however, after numerous attempts, the FBI has been unable to locate this file and therefore determine if this cross-reference is identical to the subject. The FBI conducted a search reasonably designed to yield documents responsive to plaintiff's request directed to FBIHQ.
>
> (20) In accordance with U.S. Department of Justice FOIA regulations, 28 C.F.R. §§ 16.3(a) and 16.41(a), FOIA/PA requesters are placed on constructive notice that it is incumbent upon them to direct their requests to those FBI field offices most likely to maintain responsive records. Mr. Frankenberry's FOIA/PA request was directed to FBIHQ. As a result, the FBI's search efforts were limited to only those records maintained at FBIHQ.

(Doc. 63.)

The above quoted portions of the Supplemental Hardy Declaration demonstrate that Defendants conducted a reasonable search for records responsive to Plaintiff's request. The Supplemental Hardy Declaration provides, in detail, an explanation of the FBI's record system. In particular, the Supplemental Hardy Declaration sets forth the manner with which FBI records are stored and retrieved and the basis for the FBI's

indexing method. Such a detailed description demonstrates the adequacy of Defendants' search procedures.

Moreover, Defendants adequately searched for documents responsive to Plaintiff's request. Here, the Supplemental Hardy Declaration makes clear that Defendants conducted both a "main" search and an additional "cross-reference" search. As a result, Defendants located 321 pages responsive to Plaintiff's request, with Defendants releasing 267 of these pages to Plaintiff. (Doc. 63.) Because "[t]he relevant inquiry is not 'whether there might exist any other documents possibly relevant to the request, but rather whether the search for those documents was adequate," *Addelfattah*, 488 F.3d at 182 (quoting *Weisberg*, 745 F.2d at 1485), Defendants' detailed account of the methods and procedures followed in searching for documents responsive to Plaintiff's request demonstrates the sufficiency of Defendants' search. As such, the Court will adopt the Magistrate Judge's recommendation and Plaintiff's summary judgment motion will be denied.

Although the Court is cognizant of Plaintiff's steadfast insistence on the existence of relevant documents that have not been produced by Defendants here, Plaintiff's request was directed solely to FBI Headquarters (Doc. 63.)[2] Because Plaintiff only requested documents from FBI Headquarters, and not the field office where the alleged documents may more likely be located, Defendants, pursuant to Department of Justice FOIA/PA regulations, were only obligated to search FBI Headquarters' records. *See* 28 C.F.R. § 16.3(a) (2011) ("for records held by a field office of the Federal Bureau of

---

2 Plaintiff argues that his FOIA request was sent to FBI Headquarters pursuant to the suggestion of an Assistant United States Attorney. (Doc. 31.) The correspondence between Plaintiff and the United States Attorney's Office, however, emphasizes that the attorney is "not aware of the guidelines which govern FBI disclosures so I make no representations with respect to the action, if any, on your possible FOIA request. (Doc. 31.) Thus, Plaintiff had an independent obligation to verify the proper FBI facility for which to send his FOIA request.

Investigation . . . you must write directly to that FBI . . . field office address"); 28 C.F.R. 16.41(a) (2011) ("for records held by a field office of the Federal Bureau of Investigation (FBI) . . . you must write directly to that FBI . . . field office address"); *see also Clemente v. FBI*, 741 F. Supp. 2d 64 (D. D.C. 2010) ("in response to a FOIA request made only to [FBI Headquarters], the FBI is not required to locate, retrieve, or release documents located not at [FBI Headquarters], but at regional field offices"). Thus, even if the documents sought by Plaintiff exist but are maintained at a field office not subject to Plaintiff's request, such a scenario does not render Defendants' search of documents maintained at the FBI facility requested by Defendant inadequate. The Court will deny Plaintiff's motion for summary judgment.

**3. Defendants' Motion for Summary Judgment**

Defendants' Motion for Summary Judgment is premised on two points. (Doc. 31.) First, Defendants argue that the search for records responsive to Plaintiff's request was reasonable. As previously discussed, Defendants sufficiently searched for documents related to Plaintiff's request maintained at FBI Headquarters. As such, summary judgment for Defendants is proper on this basis.

Second, Defendants assert that summary judgment is appropriate because no documents have been improperly withheld from Plaintiff. To support Defendants' argument that no documents have been improperly withheld, Defendants have provided a supplemental 239 page *Vaughn* index. (Doc. 63.) The supplemental *Vaughn* index provides a summary of the justification categories relied on by Defendants to withhold information responsive to Plaintiff's request as well as narrative descriptions setting forth the FBI's justification for withholding each particular category of information under the applicable statutory exemption. Plaintiff, however, challenges the sufficiency of the supplemental *Vaughn* index. According to Plaintiff, the supplemental index does not correlate the claimed exemption to the withheld information and that there is "no specific contextual link provided by the defendants between the redacted material and the exemption claimed by the defendants." (Doc. 66.) For summary judgment to be proper

on Defendants' argument that no responsive documents have been improperly withheld, Defendants must demonstrate: (1) the justification for withholding is described with reasonable specificity; (2) a logical connection between the information withheld and the exemption claimed; and (3) the supporting affidavits are not controverted by contrary evidence in the record or evidence of bad faith. *See Davin*, 60 F.3d at 1050. As Defendants rely on multiple exemptions to justify the withholding of responsive information, each exemption cited by Defendants will be addressed *in seratim*.

**A. (b)(2) Exemption**

Defendants claim exemption (b)(2)-1, in conjunction with exemption (b)(7)(E)-1, on eleven (11) separate pages to withhold from disclosure information relating to FBI investigative techniques and procedures used on Form FD-515. Defendants rely on exemption (b)(2)-2, in conjunction with exemption (b)(7)(E)-2, on thirteen (13) different pages to withhold information relating to FBI investigative techniques and procedures generally. And, Defendants assert exemption (b)(2)-3, in conjunction with (b)(7)(E)-3, on five (5) separate pages to withhold polygraph information.

Exemption (b)(2) shields from disclosure information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C.A. § 552(b)(2). When an agency seeks to invoke exemption (b)(2), the agency must show that the withheld information falls within the statutory language of the exemption. *See Cozen O'Connor*, 570 F. Supp. at 774-75 (citing *Schwaner v. Dep't of Air Force*, 898 F.2d 793, 794 (D.C. Cir. 1990). The statutory language, according to the D.C. Circuit in *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1056 (D.C. Cir. 1981), *abrogated by Milner v. United States Dep't of Navy*, 131 S. Ct. 1259, 179 L. Ed. 2d 268 (2011), encompassed "not merely minor employment matters, but may cover other rules and practices governing agency personnel, including significant matters like job training for law

enforcement personnel." Three Courts of Appeals[3] subsequent to *Crooker* distinguished between the "low-2" exemption, which included "predominantly internal documents that deal with trivial administrative matters," and the "high-2" exemption which included "predominantly internal documents the disclosure of which would risk circumvention of agency statutes and regulations." *Schiller v. N.L.R.B.*, 964 F.2d 1205, 1207 (D.C. Cir. 1992), *abrogated by Milner*, 131 S. Ct. 1259.

In 2011, however, the interpretation of the (b)(2) exemption to include a distinction between "low-2" and "high-2" material was rejected by the Supreme Court. *See Milner*, 131 S. Ct. at 1271. In *Milner*, the petitioner submitted FOIA requests to the Navy seeking Explosive Safety Quantity Distance ("ESQD") information related to the Navy's operations at Naval Magazine Indian Island in Puget Sound, Washington. *See id*. at 1263-64. ESQD information assists the Navy in designing and constructing explosive storage facilities so as to prevent a chain reaction in the event of detonation. *See id*. at 1263. Frequently, these ESQD calculations are incorporated into maps setting forth the potential effects of hypothetical explosions. *See id*.

In 2003 and 2004, petitioner submitted FOIA requests for all ESQD information relating to Indian Island. *See id*. at 1264. The Navy, however, relying on exemption (b)(2), "refused to release the data, stating that disclosure would threaten the security of the base and surrounding community." *Id*. The District Court for the Western District of Washington granted summary judgment to the Navy and the Ninth Circuit Court of Appeals affirmed, relying on the "high-2" exemption developed by the D.C. Circuit in

---

3 The Courts of Appeals adopting the D.C. Circuit's "low-2", "high-2" distinction were the Second Circuit, *Massey v. FBI*, 3 F.3d 620 (2d Cir. 1993), the Seventh Circuit, *Kaganove v. EPA*, 856 F.2d 884 (7th Cir. 1988), and the Ninth Circuit, *Milner v. United States Dep't of Navy*, 575 F.3d 959 (9th Cir. 2009). Conversely, prior to *Crooker*, three Courts of Appeals had taken a narrower view of the (b)(2) exemption. *See Cox. v. Dep't of Justice*, 576 F.2d 1302 (8th Cir. 1978); *Stokes v. Brennan*, 476 F.2d 699 (5th Cir. 1973); *Hawkes v. IRS*, 467 F.2d 787 (6th Cir. 1972).

*Crooker*. *See id*. The Supreme Court granted certiorari to resolve the Circuit split regarding the meaning of the (b)(2) exemption. *See id*.

In reversing the Ninth Circuit, the Supreme Court held that "[e]xemption 2, consistent with the plain meaning of the term 'personnel rules and practices,' encompasses only records relating to issues of employee relations and human resources.'" *Id*. at 1271. According to the Court, "the only way to arrive at High 2 is by taking a red pen to the statute- 'cutting out some' words and 'pasting in others' until little of the actual provision remains." *Id*. at 1267 (quoting *Elliott v. Dep't of Agriculture*, 596 F.3d 842, 845 (D.C. Cir. 2010)). Thus, the Court emphasized that the proper "construction of the statutory language makes clear that Low 2 is all of 2 (and that High 2 is not 2 at all)." *Id*. at 1265. Because the petitioner's FOIA request sought information unrelated to "issues of employee relations and human resources," the Court concluded that the Navy could not rely on the (b)(2) exemption to withhold the requested data. *Id*. at 1271.

**i. (b)(2)-1 Exemption**

In the Magistrate Judge's R & R, issued prior to the Supreme Court's *Milner* decision, Magistrate Judge Mannion recommended the Court grant summary judgment to Defendants on the material withheld pursuant to the (b)(2)-1 exemption as the withheld information relates to information contained in FBI Form FD-515. (Doc. 71, 48.) The Magistrate Judge's recommendation makes clear, however, that the information withheld "consists of a specific investigative technique, [which] could enable criminals (such as plaintiff) to educate themselves about the techniques employed for the location and apprehension of individuals and, therefore, allow these individuals to take countermeasures to circumvent the effectiveness of these techniques and to continue to violate the law." (Doc. 71.) Defendants' explanation of withholding this information pursuant to exemption (b)(2)-1 clearly invokes the "high-2" interpretation rejected by *Milner*, 131 S. Ct. at 1271, as the withheld information does not relate to "issues of employee relations or human resources." As such, Defendants cannot rely on the

(b)(2)-1 exemption to withhold information related to Form FD-515 subsequent to *Milner*. However, because the Form FD-515 information was also withheld pursuant to exemption (b)(7)(E)-1, the Court will address whether the withholding of this information was proper pursuant to that exemption. *See infra* Part II.3.D.i.

**ii. (b)(2)-2 Exemption**

Defendants rely on exemption (b)(2)-2, in conjunction with exemption (b)(7)(E)-2, to withhold information related to FBI investigative techniques and procedures. (Doc. 63.) As Plaintiff did not challenge Defendants' withholding of material under the (b)(2)-2 exemption, the Magistrate Judge did not review the material withheld pursuant to this exemption. (Doc. 71, 42 n.16.) Instead, the withholding of information relating to FBI investigative techniques and procedures was analyzed by Magistrate Judge Mannion under exemption (b)(7)(E)-2.[4] Thus, whether Defendants properly withheld this information will be analyzed by the Court in its discussion regarding the (b)(7)(E)-2 exemption. *See infra* Part II.3.D.ii.

**iii. (b)(2)-3 Exemption**

Defendants relied on exemption (b)(2)-3, in conjunction with exemption (b)(7)(E)-3, to withhold polygraph information. (Doc. 63.) As Plaintiff did not challenge Defendants' withholding of material under the (b)(2)-3 exemption, the Magistrate Judge did not review the material withheld pursuant to this exemption. (Doc. 71, 42 n.16.) Instead, the withholding of polygraph information was analyzed by Magistrate Judge Mannion under the (b)(7)(E)-3 exemption.[5] Accordingly, the Court will address whether

---

[4] As with the materials withheld pursuant to the (b)(2)-1 exemption, Defendants could not properly withhold information relating to FBI investigative techniques and procedures pursuant to exemption (b)(2)-2 in light of *Milner*, as this material does not concern issues of human resources or employee relations. *See Milner*, 131 S. Ct. at 1271.

[5] After *Milner*, polygraph information does not qualify as information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C.A. § 552(b)(2); *see also Milner*, 131 S. Ct. at 1271. Thus, Defendants cannot properly

Defendants properly withheld polygraph information in its discussion relating to the (b)(7)(E)-3 exemption. *See infra* Part II.3.D.iii.

**B. (b)(6) and (b)(7)(C) Exemptions**

Defendants rely on exemption (b)(6), in conjunction with (b)(7)(C), to withhold information that would, or could reasonably be expected to, "constitute an unwarranted invasion of personal privacy." (Doc. 63, ¶ 34, n.11.)

The (b)(6) exemption permits an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personnel privacy." 5 U.S.C.A. § 552(b)(6). Similarly, the (b)(7)(C) exemption allows an agency to withhold "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C.A. § 552(b)(7)(C). FBI policy practice, however, "is to assert Exemption (b)(6) in conjunction with (b)(7)(C)." (Doc. 63, ¶ 34 n.11.)[6]

---

invoke the (b)(2)-3 exemption to withhold polygraph material.

6 In *Milner*, the Supreme Court interpreted the term "personnel", in the context of the (b)(2) exemption: "[t]he use of the term 'personnel' in each of these phrases connotes not that the file or department or practice/rule is for personnel, but rather that the file or department or practice/rule is about personnel- i.e., that it relates to employee relations or human resources." *Milner*, 131 S. Ct. at 1269. And, the *Milner* Court noted that a "personnel file," had previously been defined by the Court as the file "showing, for example, where [an employee] was born, the names of his parents, where he has lived from time to time, his . . . school records, results of examinations, [and] evaluations." *Id*. at 1265 (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 377, 96 S. Ct. 1592, 48 L. Ed. 2d 11 (1976)). In light of *Milner*, it is likely improper for Defendants to withhold names and/or identifying information pursuant to the (b)(6) exemption *unless* the withheld "personnel" information relates to the agency's "human resources" file. *See, e.g., Milner*, 131 S. Ct. at 1265 ("the statute uses the term 'personnel' as a modifier meaning 'human resources'"). Nevertheless, the Court need not resolve the proper construction of the (b)(6) exemption because Defendants rely on exemption (b)(7)(C) in conjunction with exemption (b)(6). (Doc. 63, ¶ 34 n.11.) As (b)(7)(C) permits withholding records which would constitute an

The Third Circuit has set forth the following standard for determining whether an agency properly withheld information pursuant to exemption (7)(C): "a request under a privacy based exemption such as 7(C) is a *de novo* balancing test, weighing the privacy interest and the extent to which it is invaded on the one hand, against the public benefit that would result from disclosure, on the other." *Davin*, 60 F.3d at 1058 (*Lame v. United States Dep't of Justice*, 654 F.2d 917, 922-23 (3d Cir. 1981)). Information, under exemption (7)(C), is "private" if it is "intended for or restricted to the use of a particular person or group or class of persons: not freely available to the public." *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-64, 109 S. Ct. 1468, 103 L. Ed. 2d 774 (1989). The privacy interest cognizable under exemption (7)(C) is not limited only to criminal suspects, but also includes law enforcement officers, witnesses, and interviewees as these individuals have a privacy interest in "not having their names revealed in connection with disclosure of the fact and subject matter of the investigation." *Manna v. United States Dep't of Justice*, 51 F.3d 1158, 1166 (1995); *see also Davin*, 60 F.3d at 1058.

To determine whether Defendants can withhold records based on exemption (b)(7)(C), the Court must determine the relative strength of an individual's privacy interest. *See Davin*, F.3d at 1058. It has long been settled in the Third Circuit that "*persons who are deceased have no privacy in nondisclosure of their identities, so the Government should disclose information about them* . . . ." *McDonnell*, 4 F.3d at 1257

---

"unwarranted" invasion of privacy, while exemption (b)(6) requires a "clearly unwarranted" invasion to justify nondisclosure, "'exemption 7(C) is more protective of privacy than exemption 6' and thus establishes a lower bar for withholding material." *ACLU v. United States Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) ("as a consequence, we do not address . . . the manner in which the Supreme Court's recent decision in *Milner* . . . affects the proper construction of FOIA Exemption 6"). Accordingly, the Court can determine whether Defendants properly withheld names and/or identifying information under exemption (b)(7)(C) without resolving the impact of *Milner* on the meaning of "personnel" as used in exemption (b)(6).

(emphasis added). When an agency asserts exemption (b)(7)(C):

> it is within the discretion of the district court to require an agency to demonstrate that the individuals upon whose behalf it claims the privacy exemption are, in fact, alive. *In exercising its discretion, the district court should consider such factors as the number of named individuals that must be investigated, and the age of the requested records. If the number of individuals is not excessive, the agency could be required to determine whether the individuals are alive before asserting a privacy interest on their behalf.* However, after a sufficient passage of time- such as in our case where the pertinent investigations began over sixty years ago (and in *McDonnell* where the investigation began over seventy years before the FOIA requests)- the probability of the named individuals remaining alive diminishes. Under such circumstances, it would be unreasonable for the district court not to assume many of the individuals named in the requested records have died, thereby negating a privacy interest unless proving otherwise.

*Davin*, 60 F.3d at 1059 (emphasis added).

After the relative strength of a privacy interest asserted by the agency has been established, the district court must then identify the "public benefits" to be weighed against the privacy interest. *See Davin*, 60 F.3d at 1059. According to the Supreme Court, "the only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purposes of the FOIA,' which is 'contributing significantly to public understanding of the operations or activities of the government.'" *United States Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495, 114 S. Ct. 1006, 127 L. Ed. 2d 325 (1994) (quoting *Reporters Comm.*, 489 U.S. at 775)). Thus, the requester must establish: "that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake. [And,] the citizen must show the information is likely to advance that interest." *Nat'l Archives & Records Admin. v. Favish*, 541 S. Ct. 157, 172, 124 S. Ct. 1570, 158 L. Ed. 2d 319 (2004). The *Favish* Court ultimately held that when a privacy interest is present and the public interest asserted is to show that responsible officials acted improperly in performing their duties, a bare suspicion alone is insufficient to obtain disclosure. *See id*. at 174. Instead, the requester must make an objective showing of misconduct. That is, the requester "must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might

have occurred." *Id*.

FOIA actions frequently involve the request of documents related to a criminal conviction of the requester. In these cases, the requester typically asserts that the documents are exculpatory and that the public has an interest in knowing whether the government is withholding information that could corroborate an inmate's claim of innocence. Courts, however, have consistently concluded that the innocence or guilt of a particular defendant does not present a sufficient "public benefit" for purposes of a FOIA action. *See, e.g., Carpenter v. United States Dep't of Justice*, 470 F.3d 434, 441 (1st Cir. 2006) ("the innocence or guilt of a particular defendant tells the Court 'nothing about matters of substantive law enforcement policy that are properly the subject of public concern'"); *Neely v. FBI*, 208 F.3d 461, 464 (4th Cir. 2000) ("courts have sensibly refused to recognize, for purposes of FOIA, a public interest in nothing more than the fairness of a criminal defendant's own trial"); *Landano v. United States Dep't of Justice*, 956 F.2d 422, 430 (3d Cir. 1992) (although a public interest exists in seeing that the innocent are not convicted, "whether that particular public interest is recognized by the FOIA is a separate question. Only when the information requested reflects directly upon the way that the agency conducts business has the requester placed something on the public interest side of the balancing equation") *vacated on other grounds*, 508 U.S. 165, 113 S. Ct. 2014, 124 L. Ed. 2d 84 (1993); *Lasko v. United States Dep't of Justice*, 684 F. Supp. 2d 120, 134 (D. D.C. 2010) ("intention to use information in records to prove his claim of innocence is not a public interest"); *Willis v. United States Dep't of Justice*, 581 F. Supp. 2d 57, 76 (D. D.C. 2008) ("it is well established that an individual's personal interest in challenging his criminal conviction is not a public interest under FOIA"). *But see Roth v. United States Dep't of Justice*, 642 F.3d 1161, 1183 (D.C. Cir. 2011) (disclosure "would further the public interest in revealing whether the FBI is withholding information that could corroborate the claim of innocence of a man whom it helped put on death row"); *Bright v. Ashcroft*, 259 F. Supp. 2d 494, 500 (E.D. La. 2003) ("Court is compelled to observe that a question of innocence and law enforcement misconduct is

at stake: the public interest is profoundly strong here”). Nevertheless, when a FOIA requester seeks documents that would corroborate a claim of innocence and the request satisfies the *Favish* objective standard for demonstrating potential government impropriety, a “public benefit” may exist mandating disclosure. *See, e.g., Carpenter*, 470 F.3d at 441 (requester, however, failed to adequately support mandating agency disclosure based on government misconduct).

After the public and private interests are identified, the competing interests must be weighed against each other. *See Davin*, 60 F.3d at 1059. In cases where a balance of interests characteristically tips in one direction, the Supreme Court permits courts to make categorical determinations and to disregard individual circumstances. *See Reporters Comm.*, 489 U.S. at 776. The Third Circuit, however, while noting that an individual’s privacy interest in not having his or her identity released will generally override the public benefit, did not interpret *Reporters Committee* as establishing a *per se* rule permitting categorical determinations in all cases. *See Davin*, F.3d at 1060. As a result, the *Davin* court determined that the agency failed to properly articulate its basis for withholding information pursuant to the (b)(7)(C).[7]

---

[7] The explanation supplied by the agency in *Davin*, but rejected as insufficient by the Third Circuit, provided that:

> it was determined that individual privacy interests were not outweighed by any public interest. When the documents at issue were reviewed . . . the passage of time and any effect on the third party privacy interests were considered. It was determined that the privacy interests are stronger now than they were when the records were created. To reveal names in the context of these records could reasonably be expected, due to the type of the investigation, to put the lives of individuals in danger, cause embarrassment and humiliation, and would therefore, be an unwarranted invasion of privacy. The disclosure of this information would not contribute significantly to the public’s understanding of the operations or activities of the Government.

*Davin*, 60 F.3d at 1060.

Here, Defendants claim the (b)(6) and (b)(7)(C) exemptions to withhold names and/or identifying information of: (i) FBI special agents and support employees; (ii) third-parties who were of investigative interest; (iii) third-parties merely mentioned; (iv) local law enforcement personnel; (v) third-parties who provided information; and (vi) non-FBI federal employees. (Doc. 63.) Plaintiff objects to Defendants' use of these exemptions and contends that Defendants may only withhold the identities of individuals that are, in fact, still alive. (Doc. 66, ¶ 22.)

Magistrate Judge Mannion recommended that summary judgment be granted to Defendants on the documents claiming the (b)(7)(C) exemption. (Doc. 71.) According to the Magistrate Judge's R & R, he could "not determine with certainty, however, how many individuals the redactions on these pages involve. Concerning the passage of time, the record demonstrates that the investigations involved began some thirty years ago. While it may be that some of the individuals involved have since passed away, there is no way to make this determination based upon the defendants' filing." (Doc. 71.) Plaintiff objects to the Magistrate Judge's recommendation, and, in particular, the Magistrate Judge's emphasis on the difficulty a court has in balancing the release of information against the need to ensure individual privacy . (Doc. 71, 27 n.9.)[8] As the Court, however, is tasked with the responsibility of reviewing documents withheld by an agency pursuant to a FOIA request *de novo*, *see* 5 U.S.C.A. § 552(a)(4)(B), the Court will address each (b)(6) and (b)(7)(C) exemption claimed by Defendants despite the inherent difficulty in conducting such a review.

**i. (b)(6)-1 and (b)(7)(C)-1 Exemptions**

Defendants rely on the (b)(6)-1 and (b)(7)(C)-1 exemptions to withhold

[8] Specifically, Plaintiff takes offense with the Magistrate Judge's recommendation to grant Defendant summary judgment in light of the Magistrate Judge's recognition that "there is no brightline rule or mathematical formula to arrive at this delicate balance. Even with these indices the court has the daunting task of trying to determine, in relative abstract, the validity of the government's claims of exemption on a document-by-document, page-by-page basis." (Doc. 71, 27 n.9.)

information on approximately 115 pages to protect the names and identifying information of FBI special agents and support employees. (Doc. 63, ¶¶ 36-37 n.13.) It is clear that Defendants may properly withhold the names and identifying information of living FBI Special Agents and FBI support employees*. See Davin, F.3d at 1058; see also Marshall v. FBI*, 802 F. Supp. 2d 125, 134 (D. D.C. 2011) ("law enforcement personnel have a privacy interest in protecting their own identities").

The more troublesome issue, however, is whether Defendants may properly invoke a privacy interest here because Defendants have provided no information as to whether the FBI Special Agents or support employees are still alive.[9] As district courts have broad discretion to determine whether an agency must demonstrate that the individuals upon whose behalf it claims the privacy exemption are, in fact, alive, *see Davin*, 60 F.3d at 1059, the Court holds that Defendants, in order to invoke exemption

---

[9] Magistrate Judge Mannion acknowledged that Defendants' filing was insufficient to determine whether Defendants invoked the privacy interests of living or deceased individuals. Magistrate Judge Mannion concluded that "the information would be of no consequence, however, if the plaintiff has not adequately set forth the public interest in having the names of these individuals released." (Doc. 71.) Essentially, Magistrate Judge Mannion is requiring the requester to demonstrate a "public benefit" for disclosure of information ***in advance of*** the agency establishing a privacy interest for withholding the material. Such an application does not comport with the statutory language of FOIA. *See* 5 U.S.C.A. § 552(b)(7)(C); *see, e.g., Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172, 124 S. Ct. 1570, 158 L. Ed. 2d 319 (2004) ("***where*** the privacy concerns addressed by Exemption 7(C) ***are present***, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure") (emphasis added); Lahr *v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 974 (9th Cir. 2009) ("**once** the government has identified a cognizable privacy interest, 'the only relevant public interest in the FOIA balancing analysis . . .") (emphasis added); *Davin*, 60 F.3d at 1059 ("the agency could be required to determine whether the individuals are alive ***before*** asserting a privacy interest . . .") (emphasis added). Contrary to Magistrate Judge Mannion's analysis, the proper approach requires the agency to first set forth a cognizable privacy interest (or, at a minimum, explain why making such a determination would create an intolerable burden). It is only after a privacy interest is present is it then necessary for a court to balance that interest against the "public benefit" of disclosure.

(b)(7)(C)-1 in this case, must make an actual determination as to whether these individuals are deceased or living. Because the Court has determined that Defendants have failed to demonstrate whether a cognizable privacy interest is present, the Court need not address whether Plaintiff set forth a sufficient "public benefit" for disclosure of the requested information.

The Court's conclusion is guided by the factors set forth in *Davin*. *See Davin*, 60 F.3d at 1059. Here, Defendants assert the (b)(7)(C)-1 exemption on approximately 115 pages. In all likelihood, the withheld and redacted information will relate to a limited number of Special Agents and support employees. Thus, requiring Defendants to identify whether these individuals are still alive before asserting a privacy interest on their behalf will not pose an intolerable burden on Defendants.

Likewise, the records Plaintiff seeks are thirty (30) years old. The age of these records increases the likelihood that a number of the individuals named in Defendants records have died, negating the privacy interest asserted by Defendants. *See id*.

Accordingly, as the Court finds that Defendants will not be unduly burdened in determining whether the Special Agents and support employees identified in Defendants' records are still alive, the Court will reject Magistrate Judge Mannion's recommendation to grant Defendants' summary judgment as to the documents withheld pursuant to exemption (b)(7)(C)-1. The case will be recommitted to Magistrate Judge Mannion so as to provide Defendants with the opportunity to demonstrate whether a privacy interest exists in the documents withheld under exemption (b)(7)(C)-1 and make a supplemental disclosure if necessary.

**ii. (b)(6)-2 and (b)(7)(C)-2 Exemptions**

Defendants claim the (b)(6)-2 and (b)(7)(C)-2 exemptions on approximately 125 pages to withhold the names and identifying information of third-parties who were of investigative interest to the FBI and/or other law enforcement agencies. (Doc. 63, ¶ 38 n.14.) Suspects and those of investigative interest to a law enforcement investigation have a privacy interest so as to avoid embarrassment or harassment. *See Davin*, 60

F.3d at 1058. However, because the Court cannot determine whether these suspects are still alive based on Defendants' filings, it is unclear whether Defendants properly asserted the privacy rights of these individuals under exemption (b)(7)(C)-2. Requiring Defendants to verify whether these suspects have died will not cause Defendants great hardship for the same reasons set forth above in relation to the privacy interest of Special Agents and support employees. As such, the Court will reject the Magistrate Judge's recommendation to grant summary judgment as to the documents withheld under exemption (b)(7)(C)-2. The case will be recommitted to Magistrate Judge Mannion. Defendants are directed to determine whether a cognizable privacy interest exists in those individuals for which exemption (b)(7)(C)-2 is claimed and make a supplemental disclosure if necessary.

**iii. (b)(6)-3 and (b)(7)(C)-3 Exemptions**

Defendants claim the (b)(6)-3 and (b)(7)(C)-3 exemptions on approximately thirty-five (35) pages to withhold identifying information relating to third-parties merely mentioned in documents responsive to Plaintiff's request. (Doc. 63, ¶¶ 39-40 n.15.) Individuals merely mentioned in criminal investigations have a cognizable privacy interest in preventing the release of that information to the public. *See, e.g., Judicial Watch, Inc. v. United States Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 212 (D. D.C. 2010). Again, because Defendants have failed to ascertain whether these third-parties merely mentioned are dead or alive, it is unclear whether Defendants may properly assert a privacy interest on their behalf. Defendants will therefore be denied summary judgment as to the documents withheld pursuant to exemption (b)(7)(C)-3. The case will be recommitted to Magistrate Judge Mannion and Defendants shall make a supplemental disclosure to Plaintiff if it is determined that no cognizable privacy interest exists in the documents withheld pursuant to (b)(7)(C)-3 exemption.

**iv. (b)(6)-4 and (b)(7)(C)-4 Exemptions**

Defendants rely on the (b)(6)-4 and (b)(7)(C)-4 exemptions on six (6) pages to withhold information relating to the names and identification of local law enforcement

personnel mentioned in documents responsive to Plaintiff's request. (Doc. 63, ¶¶ 41-42 n.16.) Living local and state law enforcement personnel have a well-recognized and substantial privacy interest in withheld information. *See Hulstein v. Drug Enforcement Admin*, No. 11-2039, 2012 WL 671964, at *3 (8th Cir. Mar. 2, 2012). Nevertheless, the Court cannot determine whether the privacy interest asserted by Defendants pursuant to exemption (b)(7)(C)-4 is cognizable because Defendants have not set forth information as to whether the local law enforcement officers mentioned are still alive. As such, the Court will reject Magistrate Judge Mannion's recommendation that Defendants be granted summary judgment. Instead, the Court will recommit the matter to the Magistrate Judge and Defendants will be required to determine whether the local law enforcement officers are living before asserting a privacy interest on their behalf.

**v. (b)(6)-5 and (b)(7)(C)-5 Exemptions**

Defendants rely on the (b)(6)-5 and (b)(7)(C)-5 exemptions as the justification to withhold information on thirteen (13) pages of responsive documents to protect the names and identifying information of parties who provided information to the FBI. (Doc. 63, ¶¶ 43-44 n. 17.) Witnesses have a privacy interest "because disclosure may result in embarrassment or harassment." *Davin*, 60 F.3d at 1058. Defendants again, however, assert the privacy interest of individuals without knowing whether the interest is cognizable. Summary judgement as to the documents claiming exemption (b)(7)(C)-5 will be denied. Defendants will be required to ascertain whether the parties who provided information to the FBI are still living in order to assert a privacy interest on their behalf. The matter will be recommitted to Magistrate Judge Mannion for further proceedings.

**vi. (b)(6)-6 and (b)(7)(C)-6 Exemptions**

Lastly, Defendants cite the (b)(6)-6 and (b)(7)(C)-6 exemptions on one (1) page to withhold identifying information of non-FBI federal employees. (Doc. 63, ¶¶ 45-47 n.18.) Federal employees have a cognizable privacy interest under exemption (b)(7)(C)-6. *See, e.g., Linn v. United States Dep't of Justice*, No. 92-1406, 1995 WL 631847at *27 (D.

D.C. Aug. 22, 1995) ("identifying information concerning third parties - including federal employees . . . is presumptively within Exemption 7(C)"). The Court cannot ascertain whether Defendants properly asserted a privacy interest in the lone non-FBI federal employee, however, as Defendants have not provided information as to whether the individual is still alive. As such, the Court will reject Magistrate Judge Mannion's recommendation that Defendants' summary judgment motion be granted as to the information withheld pursuant to exemption (b)(7)(C)-6. Defendants will be required to make a supplemental disclosure to Defendants of Frankenberry-45 if it is determined that Defendants cannot properly assert a privacy interest under exemption (b)(7)(C)-6. The matter will be recommitted to Magistrate Judge Mannion for further proceedings.

**C. (b)(7)(D) Exemption**

Exemption (b)(7)(D) exempts from disclosure records or information compiled for law enforcement purposes to the extent production:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C.A. § 552(b)(7)(D). A source is confidential only if the source "'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could reasonably be inferred." *United States Dep't of Justice v. Landano*, 508 U.S. 165, 172, 113 S. Ct. 2014, 124 L. Ed. 2d 84 (1993) (quoting H.R. Conf. Rep. No. 1200, 93rd Cong., 2d Sess. 13 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6267, 6285, 6291). Unlike the (b)(6) and (b)(7)(C) exemption, a court does not balance the public and private interests. *Roth v. United States Dep't of Justice*, 642 F.3d 1161, 1184 (D.C. Cir. 2011). Thus, if an agency establishes that a source revealed information under an express or implied assurance of confidentiality, the inquiry is over and the agency may withhold the record under exemption (b)(7)(D). *See id*. at 1184-85.

An agency claiming the (b)(7)(D) exemption bears the burden of establishing its

applicability. *See Davin*, 60 F.3d at 1061. As Defendants rely on both the confidential source exemption under theories of "express" and "implied" confidentiality, these theories, and whether Defendants properly asserted them, will be addressed in turn.

**i. (b)(7)(D)-1**

Defendants cite exemption (b)(7)(D)-1 to withhold confidential source information under an express assurance of confidentiality on nineteen (19) pages. (Doc. 63, ¶ 52 n.19.) For an agency to properly withhold information under a claim of express assurances of confidentiality, "the agency is required to come forward with probative evidence that the source did in fact receive an express grant of confidentiality." *Davin*, 60 F.3d at 1061. This proof may take the form of declarations demonstrating the express grant of confidentiality, contemporaneous documents reflecting the express grant of confidentiality, evidence of a policy providing an express grant of confidentiality to certain sources, or other evidence comporting with the Federal Rules of Evidence. *See id*.

Based on the Court's review of the documents withheld by Defendants, the Court is unable to determine whether Defendant's properly withheld documents under an express grant of confidentiality.[10] Here, the Court has not been presented with contemporaneous documents evidencing express grants of confidentiality or evidence of a policy providing for a grant of confidentiality to specific sources of information. *See Davin*, 60 F.3d at 1061. Instead, the only evidence Defendants provide relating to an express assurance of confidentiality are the statements set forth in the Supplemental Hardy Declaration. (Doc. 63.) While the Court assumes that Defendants seek to withhold identifying information of these informants sincerely, the Court's assumption as

[10] The Court's review of Frankenberry-58 and Frankenberry-60, however, clearly establish an express grant of confidentiality, as the documents provide "consenting party is [extracted] (Protect)" and that the informant "requested that his identity be protected." (Doc. 63.) Defendants are therefore entitled to summary judgment as to Frankenberry-58 and Frankenberry-60.

to Defendants' intent does not satisfy *Davin's* "probative evidence" standard. *See Davin*, 60 F.3d at 1061. The Magistrate Judge's recommendation to grant Defendants' motion for summary judgment as to documents withheld pursuant to exemption (b)(7)(D) will be denied. The matter will be recommitted to Magistrate Judge Mannion and Defendants will be required to provide probative evidence of an express assurance of confidentiality in order to withhold information pursuant to exemption (b)(7)(D).

**ii. (b)(7)(D)-2**

Defendants rely on exemption (b)(7)(D)-2 to withhold disclosing confidential source information under an implied assurance of confidentiality on eight (8) pages. (Doc. 63, ¶ 54 n.20.) An agency may withhold information under an implied assurance of confidentiality when "the source furnished information with the understanding that the [agency] would not divulge the communication except to the extent the [agency] thought necessary for law enforcement purposes." *Landano*, 508 U.S. at 174. Although an agency is not entitled to a presumption that the information was provided confidentiality, an assurance of confidentiality can be implied by the nature of the investigation and the informant's relationship to the investigation. *McGehee v. United States Dep't of Justice*, 800 F. Supp. 2d 220, 234 (D. D.C. 2011) (citing *Landano*, 508 U.S. at 181).

After reviewing the material claimed by Defendants to be protected from disclosure under an implied assurance of confidentiality, the Court agrees with the Magistrate Judge's recommendation that the information was properly withheld under a theory of implied assurance of confidentiality. (Doc. 71.) Here, based on the nature of the investigation and the confidential sources' relationship to the investigation, the information was provided under an implied assurance of confidentiality. The Court will therefore adopt the Magistrate Judge's recommendation and grant summary judgment to Defendants on the material withheld pursuant to exemption (b)(7)(D)-2.

**D. (b)(7)(E) Exemption**

Under exemption (b)(7)(E), an agency may withhold records or information compiled for law enforcement purposes when production of the records "would disclose

techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonable be expected to risk circumvention of the law." 5. U.S.C.A. § 552(b)(7)(E). In the Third Circuit,"[e]xemption 7(E) applies to law enforcement records which, if disclosed, would risk circumvention of the law. This exemption, however, may not be asserted to withhold routine techniques and procedures already well-known to the public, such as ballistic tests, fingerprinting, and other scientific tests commonly known." *Davin*, 60 F.3d at 1064 (citing *Ferri v. Bell*, 645 F.2d 1213, 1224 (3d Cir. 1981)).

**i. (b)(7)(E)-1 Exemption**

As set forth previously, Defendants relied on the (b)(7)(E)-1 exemption, in conjunction with the (b)(2)-1 exemption, to withhold information contained in FBI Form FD-515. Specifically, Defendants redacted the "rating columns" on Form FD-515, which is used to evaluate the effectiveness of a technique in an investigation, in order to prevent criminals from changing their activities and modus operandi to avoid detection in the future. (Doc. 63, ¶ 57.) Although the Defendants cannot withhold this information as "related solely to the internal personnel rules and practices of an agency" as recently interpreted by the *Milner* Court, the information contained in Form FD-515 can be properly withheld under exemption (b)(7)(E)-1. *See* 5 U.S.C.A. § 552(b)(2); 5 U.S.C.A. § 552(b)(7)(E); *see also Milner*, 131 S. Ct. at 1271.

In relying on exemption (b)(7)(E), multiple courts have held that an agency may withhold ratings information contained in Form FD-515. *See, e.g., Sellers v. United States Dep't of Justice*, 684 F. Supp. 149, 164 (D. D.C. 2010) (affirming withholding of information contained in Form FD-515); *Concepcion v. FBI*, 606 F. Supp. 2d 14, 44 (D. D.C. 2009) ("court concludes that the FBI properly withholds both the investigative accomplishments report's rating column and information that would reveal techniques and procedures for conducting investigations and undercover operations under Exemption . . . 7(E)"); *Perrone v. FBI*, 908 F. Supp. 24, 28 (D. D.C. 1995) (concluding the defendant adequately articulated reasoning to withhold information contained in

Form FD-515).

Based on this precedent, the Supplemental Hardy Declaration, and a review of the eleven (11) pages withheld pursuant to exemption (b)(7)(E)-1, Defendants properly withheld the ratings columns on Form FD-515. In particular, Defendants' withholding of this material pursuant to exemption (b)(7)(E)-1 satisfies the Third Circuit's requirements for an agency to withhold information responsive to a FOIA request. *See Davin*, 60 F.3d at 1050; *McDonnell*, 4 F.3d at 1241. Here, Defendants provide a detailed justification for withholding the ratings columns by specifically articulating that the ratings columns reveal specific investigative techniques and release of these techniques could circumvent the law or impede future investigations. *See Davin*, 60 F.3d at 1050; *McDonnell*, 4 F.3d at 1241. As Defendants sufficiently articulate the relevancy of exemption (b)(7)(E)-1 to Form FD-515 and Defendants correlate those claims to the withholding of the ratings columns, summary judgment is proper for Defendants on the material withheld under exemption (b)(7)(E)-1.

**ii. (b)(7)(E)-2 Exemption**

Defendants rely on exemption (b)(7)(E)-2 to withhold information relating to investigative techniques and procedures on thirteen (13) pages. (Doc. 63, ¶ 29 n.8.) In reviewing the materials withheld pursuant to exemption (b)(7)(E)-2, the Magistrate Judge found Defendants' categorical justification insufficient to make a determination as to whether the information was properly withheld. (Doc. 71, 51). Thus, the Magistrate Judge "recommended that the defendants' motion for summary judgment be denied with respect to that information withheld pursuant to (b)(7)(E)-2 which is not related to monies expended in relation to the investigation of the plaintiff." (Doc. 71, 51.) Defendants filed an objection to the R & R limited solely to the Magistrate Judge's finding that Frankenberry-54 was not properly withheld pursuant to exemption (b)(7)(E)-2. (Doc. 81.) According to Defendants, information on Frankenberry-54 should be withheld because "the redacted information divulges the precise placement of recording devices used by the FBI to monitor conversations of criminal value in its investigations." (Doc. 82). Thus,

Defendants assert that disclosure of this information could circumvent similar techniques used in the future. (Doc. 82.)

The Court will adopt the Magistrate Judge's recommendation and deny Defendants' summary judgment as to the information withheld pursuant to exemption (b)(7)(E)-2 with the exception of Frankenberry-54. Here, Defendants properly redacted information related to expenditures made in the course of investigating Plaintiff. *See, e.g., Concepcion*, 606 F. Supp. 2d at 43-44 (money used to purchase evidence may be withheld under exemption (b)(7)(E)). Similarly, Defendants properly withheld Frankenberry-54 as an agency surveillance technique because disclosure of the redacted information could enable criminals to alter their behavior and circumvent the law in the future. *See, e.g., Showing Animals Respect & Kindness v. United States Dep't of Interior*, 730 F. Supp. 2d 180, 200 (D. D.C. 2010) ("documents which disclose the location and timing of such surveillance could be reasonably expected to risk circumvention of the law"); *Durrani v. United States Dep't of Justice*, 607 F. Supp. 2d 77, 91 (D. D.C. 2009) (agency "properly applied [7(E)] exemption to 'surveillance' techniques 'not known to the subject or potential subjects of the ongoing investigation'"); *Piper v. United States Dep't of Justice*, 294 F. Supp. 2d 16, 31 (D. D.C. 2003) (FBI properly invoked exemption (b)(7)(E) "to protect sensitive electronic monitoring devices that are not widely known by the public"). However, as to the remaining documents claiming exemption (b)(7)(E)-2, Defendants must make a supplemental release of these documents.[11] Defendants will be denied summary judgment as to the materials withheld pursuant to exemption (b)(7)(E)-2 except for those materials withheld in Frankenberry-54 and the documents relating to FBI expenditures.

**iii. (b)(7)(E)-3 Exemption**

The final exemption asserted by Defendants, exemption (b)(7)(E)-3, used in

11 Defendants have already expressed a willingness to make a supplemental release of information in accordance with the Magistrate Judge's recommendation. (Doc. 82, n.2)

conjunction with exemption (b)(2)-3, is relied on by Defendants to withhold polygraph material. Defendants cite exemption (b)(7)(E)-3 on five (5) pages. As noted previously, based on *Milner*, Defendants may not properly withhold the polygraph material under exemption (b)(2) because polygraph material does not relate to human resources or employee relations issues. *See Milner*, 131 S. Ct. at 1271. Nevertheless, Defendants may properly withhold the polygraph material pursuant to exemption (b)(7)(E)-3 because Defendants provide both a detailed justification of the relevancy of the exemption and Defendants correlate those claims to the withheld material. *See Davin*, 60 F.3d at 1050. Defendants also make clear that disclosure of the polygraph material could result in circumvention of the law in the future. *See id*. at 1064. As such, Magistrate Judge Mannion's recommendation to grant Defendants summary judgment as to exemption (b)(7)(E)-3 will be adopted.

Multiple courts have reached similar conclusions that an agency may properly withhold polygraph information and material under exemption (b)(7)(E). For example, in *Perrone v. FBI*, 908 F. Supp. 24, 28 (D. D.C. 1995), the defendant withheld information pursuant to exemption (b)(7)(E) regarding the type of polygraph test, the type of polygraph machine used in criminal investigations, and a list of polygraph questions used by the defendant. The defendant emphasized that the effectiveness of a polygraph examination requires that the examinee be unaware of the questions to be asked or the sequence of the questions. *See id*. The court concluded that the defendant properly withheld the polygraph information pursuant to the (b)(7)(E) exemption. *See id*.

Similarly, in *Piper v. United States Dep't of Justice*, 294 F. Supp. 2d 16, 30 (D. D.C. 2003) , the defendant withheld information under exemption (b)(7)(E) containing "logistical considerations involved in polygraph examinations." The *Piper* court first concluded that the polygraph examinations were conducted in relation to a criminal investigation, thus satisfying the requirement that the information was "compiled for law enforcement purposes." *Id*. And, because the polygraph techniques were not widely known to the public, the court reasoned that disclosure of the withheld information could

foreseeably circumvent the polygraph process. *See id*. Thus, the court concluded that the defendant properly withheld polygraph material under exemption (b)(7)(E). *See id*; *see also Shores v. FBI*, 185 F. Supp. 2d 77, 85 (D. D.C. 2002) ("Defendants may withhold polygraph information under Exemption 7(E)").

Here, as with the agencies in the previous cases, Defendants properly withheld polygraph material pursuant to exemption (b)(7)(E)-3. According to the memorandum preceding the withheld polygraph report, the polygraph examination of a third-party of investigative interest to the FBI occurred on March 18, 1983. (Doc. 63, 179.) Thus, the polygraph examination and report was clearly "compiled for law enforcement purposes." 5 U.S.C.A. § 552(b)(7). The Supplemental Hardy Declaration makes similarly clear that the withheld polygraph procedures are also not generally known to the public and release of this information could encourage circumvention of the law in the future. *See Davin*, 60 F.3d at 1064 (citing *Ferri v. Bell*, 645 F.2d 1213, 1224 (3d Cir. 1981)). Accordingly, the Court will adopt the Magistrate Judge's recommendation to grant Defendants summary judgment on the polygraph materials withheld pursuant to exemption (b)(7)(E)-3.

## III. Conclusion

In summary, Plaintiff's Motion for Summary Judgment will be denied. Defendant's Motion for Summary Judgment will be granted in part and denied in part. Defendants will be granted summary judgment as to the adequacy of their search, as to documents Frankenberry-54, Frankenberry-58, and Frankenberry-60, and to documents withheld pursuant to exemptions (b)(7)(D)-2, (b)(7)(E)-1, and (b)(7)(E)-3. Defendants will be denied summary judgment as to documents withheld under exemptions (b)(2), (b)(6), (b)(7)(C), (b)(7)(D)-1 (except for Frankenberry-58 and Frankenberry-60), and (b)(7)(E)-2 (except for documents relating to FBI expenditures and Frankenberry-54).[12]

---

12 As noted by Magistrate Judge Mannion, however, if Defendants were granted summary judgment on a claimed exemption, but the same information was withheld pursuant to a second exemption which summary judgment was denied,

Defendants shall determine whether the documents withheld pursuant to exemption (b)(7)(C) have properly been withheld based on a cognizable privacy interest as set forth above. Similarly, Defendants shall determine whether the documents withheld pursuant to exemption (b)(7)(D)-1 (except for Frankenberry-58 and Frankenberry-60) have been properly withheld based on an express assurance of confidentiality. If Defendants determine these documents may properly be withheld pursuant to these exemptions, Defendants shall provide Magistrate Judge Mannion with additional evidence establishing the proper basis for withholding this information. However, if Defendants determine that these exemptions are improperly asserted, Defendants shall make a supplemental disclosure of information to Plaintiff.

For the foregoing reasons, the Court will adopt in part and reject in part Magistrate Judge Mannion's Report and Recommendation and the matter will be recommitted to Magistrate Judge Mannion for further proceedings.

An appropriate order follows.

March 21, 2012
Date

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge

the information need not be disclosed. (Doc. 71, 47 n.20.)